# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| **IN RE: ERMI LLC** | ) | **Case No. 0:19-MD-02914-RKA** |
| **('289) PATENT LITIGATION** | ) | |
| | ) | **ALL CASES** |
| | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |

**PLAINTIFF ERMI LLC'S FIRST AMENDED OMNIBUS COMPLAINT**

Plaintiff ERMI LLC (hereinafter "ERMI" or "Plaintiff"), in support of this First Amended Omnibus Complaint against Defendants:

A.      Eduardo M. Marti (hereinafter "Mr. Marti"), Team Post Op, Inc. (hereinafter "Team Post Op"), and T-Rex Rehab, LLC (hereinafter "Rehab") (collectively the "Marti Defendants");

B.      T-Rex Investment, Inc. (hereinafter "T-Rex Investment"), OneDirect Health Network, Inc. (hereinafter "OneDirect"), Thomas H. Greene (hereinafter "Mr. Greene"), and Jeffrey Smith (hereinafter "Mr. Smith") (collectively the "OneDirect Defendants");

C.      Kaiser Medical, Inc. (hereinafter "Kaiser Medical") and Robert Kaiser (hereinafter "Mr. Kaiser") (collectively the "Kaiser Defendants"); and

D.      Kinnick Medical Limited (hereinafter "Kinnick"), Detroit Medical Devices, LLC (hereinafter "Detroit Medical"), Douglas B. Jones (hereinafter "Mr. Jones"), North State Surgical Devices, LLC (hereinafter "Northstate"), Mary Patricia Coppedge (hereinafter "Ms. Coppedge"), Chas Welch (hereinafter "Mr. Welch"), David Long (hereinafter "Mr. Long"), CMS Medical Solutions (hereinafter "CMS Medical"), Jeff Hegwood (SC) (hereinafter "Mr. Hegwood (SC)"), Jon Trumble (hereinafter "Mr. Trumble"), Tab Bone (hereinafter "Mr. Bone"), Absolute Surgical

(hereinafter "Absolute"), Brett West (hereinafter "Mr. West"), Jeff Hegwood (AL) (hereinafter "Mr. Hegwood (AL)"), KPM2, LLC (hereinafter "KPM2"), Marc Levitt (hereinafter "Mr. Levitt"), Medfocus Solutions (hereinafter "Medfocus"), Premier Orthopedic Solutions, Inc. (hereinafter "Premier Orthopedic"), Tyson & Carter, Inc. (hereinafter "Tyson & Carter"), Cade Medical (hereinafter "Cade"), Great American Spine & Biologics, LLC (hereinafter "Great American"), SE Medical, LLC (hereinafter "SE Medical"), Soma Medical, LLC (hereinafter "Soma Medical"), SOS Medical-LITE (hereinafter "SOS Medical"), Tom Duty (hereinafter "Mr. Duty"), Orthopedics International (hereinafter "Orthopedics Intl."), Decker Medical, LLC (hereinafter "Decker Medical"), PointClear Solutions (hereinafter "PointClear"), IASO Biosciences, LLC (hereinafter "IASO"), and SGR Medical (hereinafter "SGR Medical") (collectively the "Distributor Defendants") (all defendants collectively the "Defendants");

does hereby allege as follows:

## NATURE OF THE ACTION

1.      Plaintiff ERMI brings this action for willful patent infringement pursuant to the Patent Act, 35 U.S.C. § 101, *et seq.*, including claims for treble damages, injunctive relief, and attorneys' fees under at least §§ 154, 281, 283-285 of that Title; for willful false advertising, willful reverse passing-off, willful unfair competition, and willful false designation of origin pursuant to the Lanham Act, 15 U.S.C. § 1051, *et seq.*, including claims for treble damages, disgorgement of profits, injunctive relief, and attorneys' fees arising from Defendants' unlawful conduct in knowingly and intentionally making false statements regarding Plaintiff and its devices in their advertising materials, in passing-off clinical research studies conducted by or on behalf of ERMI with ERMI devices as their own, and by using in commerce trademarks likely to deceive the purchasing public and/or cause confusion with marks owned by ERMI; for Georgia

state law willful unfair competition pursuant to Ga. Code. § 10-1-373 including claims for an injunction; for Georgia willful trademark infringement and dilution pursuant to Ga. Code § 10-1-451 including claims for damages, disgorgement of profits, and injunctive relief; and for willful copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq*., including claims for damages, disgorgement of profits, and injunctive relief arising from Defendants' unlawful conduct in copying, using, distributing, and publicly displaying Plaintiff's copyrighted works comprising photographic works.

### THE PARTIES

2.      ERMI is a Delaware limited liability company with its principal offices located at 441 Armour Place NE, Atlanta, Georgia, 30324.

3.      ERMI holds legal ownership of, and has standing to sue for infringement of, United States Patent Number 7,547,289 (hereinafter "the '289 Patent") entitled "Shoulder Extension Control Device" which issued on June 16, 2009. **Exhibit 1**.

4.      ERMI has standing to sue for infringement of and holds legal ownership of all right, title, interest, and goodwill associated with the trademark ORBIT (hereinafter "ERMI's ORBIT mark") for retail and online retail store services featuring surgical supplies. ERMI owns United States Trademark Application Serial No. 88696447 for the ORBIT mark. **Exhibit 2**. ERMI's ORBIT mark is registered with the Georgia Secretary of State and has Georgia trademark Registration Number S-29990. **Exhibit 3**.

5.      ERMI has standing to sue for infringement of and holds legal ownership of all right, title, interest, and goodwill associated with the trademark TREX (hereinafter "ERMI's TREX mark") for educational services, namely, presentations and speeches in the field of orthopedics and physical rehabilitation. ERMI owns United States Trademark Application Serial

No. 88696427 for the TREX mark. **Exhibit 4**. ERMI owns the Georgia Trademark Registration No. S-29940 for the TREX mark. **Exhibit 5**.

6.    ERMI has standing to sue for infringement of, and holds all right, title, and interest in the copyrights for several photographs. ERMI has registered its claims of copyright in the photographs with the United States Copyright Office, as evidence by Certificate of Registration VA 2-146-537 ("ERMI Arm Device Photograph"), a true and correct copy attached as **Exhibit 6**; Certificate of Registration VA 2-146-536 ("ERMI Chair Device Photograph"), a true and correct copy attached as **Exhibit 7**; and Certificate of Registration VA 2-146-538 ("ERMI Leg Device Photograph"), a true and correct copy attached as **Exhibit 8**; (collectively, the "Copyrighted Works"). True and correct copies of the deposit copy of each photograph are attached as **Exhibit 9**.

7.    ERMI was formerly incorporated in Georgia as ERMI, Inc. but, effective April 1, 2019, ERMI, Inc. was converted to become ERMI LLC. This conversion has been duly recorded with the United States Patent and Trademark Office with reference to the '289 Patent.

8.    On information and belief, Mr. Marti is an individual with a personal residence at 19274 South Hibiscus Street, Weston, Florida, 33332. Mr. Marti is an owner, founder, Vice President, and CEO of Team Post Op. Mr. Marti is now or was previously the "National Sales Director" of OneDirect.

9.    On information and belief, Team Post Op is a Florida corporation with principal offices located at 14133 NW 8th Street, Sunrise, Florida, 33325.

10.    On information and belief, Rehab is a Florida limited liability company with principal offices located at 19274 South Hibiscus Street, Weston, Florida, 33332.

4

11.     On information and belief, T-Rex Investment is a Georgia corporation with principal offices located at 2964 Peachtree Road NW, Suite 400, Atlanta, Georgia, 30305.

12.     On information and belief, OneDirect is a Georgia corporation with principal offices located at 2964 Peachtree Road NW, Suite 400, Atlanta, Georgia, 30305.

13.     On information and belief, Mr. Smith is an individual with a personal residence in the Northern District of Georgia located at 4124 Whitewater Creek Road NW, Atlanta, Georgia 30327-3945.

14.     On information and belief, Mr. Smith is the CEO of OneDirect.

15.     On information and belief, Mr. Greene is an individual with a personal residence located at 11 West Andrews Drive NorthWest, Atlanta, Georgia 30305-2018.

16.     On information and belief, Mr. Greene is the Chairman of OneDirect.

17.     On information and belief, Kinnick is an Illinois corporation with principal offices located at 1919 Midwest Road, Suite 105, Oakbrook, IL 60523.

18.     On information and belief, Kaiser Medical is a Pennsylvania corporation having a principal address at 8 Independence Way, Southampton, New Jersey 08088-9047.

19.     On information and belief, Mr. Kaiser is an individual with a personal residence at 8 Independence Way, Southampton, NJ 08088-9047.

20.     On information and belief, Mr. Kaiser is the President and owner of Kaiser Medical.

21.     On information and belief, Mr. Jones is an individual with a personal residence in the Eastern District of Michigan.

22.     On information and belief, Mr. Jones is a Principal of and also a sales representative associated with Detroit Medical.

23.     On information and belief, Detroit Medical is a Michigan limited liability company with principal offices located at 2647 Browning Drive, Lake Orion, MI 48360.

24.     On information and belief, Ms. Coppedge is an individual with a personal residence in the Eastern District of North Carolina.

25.     On information and belief, Ms. Coppedge is an owner of and a sales representative associated with Northstate.

26.     On information and belief, Northstate is a North Carolina limited liability company with principal offices located at 3604 Henrys Garden Lane, Raleigh, NC 27612-4282.

27.     On information and belief, Mr. Welch is an individual residing in the Middle District of Tennessee.

28.     On information and belief, Mr. Long is an individual residing in the state of Illinois.

29.     On information and belief, CMS Medical is a South Carolina limited liability company with headquarters in the District of South Carolina.

30.     On information and belief, Mr. Hegwood (SC) is an individual residing in the District of South Carolina.

31.     On information and belief, Mr. Trumble is an individual residing in the Southern District of Georgia.

32.     On information and belief, Mr. Bone is an individual residing in the Northern District of Georgia.

33.     On information and belief, Absolute is a Florida Corporation with headquarters in the Northern District of Florida.

34.     On information and belief, Mr. West is an individual residing in the Middle District of Florida.

35.     On information and belief, Mr. Hegwood (AL) is an individual residing in the Southern District of Alabama.

36.     On information and belief, KPM2 is a Georgia limited liability company with headquarters in the Southern District of Georgia.

37.     On information and belief, Mr. Levitt is an individual residing in the Western District of North Carolina.

38.     On information and belief, Medfocus is a California corporation with headquarters in the Southern District of California.

39.     On information and belief, Premier Orthopedic is a New York corporation with headquarters in the Northern District of New York.

40.     On information and belief, Tyson & Carter is a Florida corporation with headquarters in the Middle District of Florida.

41.     On information and belief, Cade is a California corporation with headquarters in the Southern District of California.

42.     On information and belief, Great American is a Pennsylvania limited liability company with headquarters in the Northern District of New York.

43.     On information and belief, SE Medical is a Georgia limited liability company with headquarters in the Northern District of Georgia.

44.     On information and belief, Soma Medical is a South Carolina limited liability company with headquarters in the District of South Carolina.

45.     On information and belief, SOS Medical is a California corporation with headquarters in the Central District of California.

46.     On information and belief, Mr. Duty is an individual residing in the Eastern District of Michigan.

47.     On information and belief, Orthopedics Intl. is a Georgia limited liability company with headquarters in the Northern District of Georgia.

48.     On information and belief, Decker Medical is a Missouri limited liability company with headquarters in the Western District of Missouri.

49.     On information and belief, PointClear is an Alabama company with headquarters in the Middle District of Tennessee.

50.     On information and belief, IASO is an Arizona limited liability company with headquarters in the District of Arizona.

51.     On information and belief, SGR Medical is a California limited liability company with headquarters in the Northern District of California.

52.     On information and belief, *all* Defendants named in this First Amended Omnibus Complaint have previously and/or are presently making, using, selling, leasing, offering for lease, offering for sale, and/or importing into the United States, products that infringe the '289 Patent and/or are inducing and/or contributing to the infringement of others. These products include, but are not necessarily limited to, the product marketed to the public as the T-Rex Orbit for Shoulder (hereinafter the "Accused Shoulder Device"). **Exhibit 10**.

53.     On information and belief, *all* Defendants named in this First Amended Omnibus Complaint have previously and are presently using the trademarks T-REX (hereinafter the "infringing T-REX mark") and/or ORBIT (hereinafter the "infringing ORBIT mark") in

commerce in connection with the sale, offering for sale, distribution, leasing, and advertising of the Accused Shoulder Device, a product marketed either as the "T-Rex Arc for Knee" device or the "T-Rex Knee" device (hereinafter the "Accused Knee Device") **Exhibit 11**, a product marketed as the "T-Rex Traverse for Hip" device (hereinafter the "Accused Hip Device"), a product marketed as the "T-Rex Driver for Ankle" device (hereinafter the "Accused Ankle Device") **Exhibit 12**, and/or other devices and services which use the infringing T-REX mark and/or the infringing ORBIT mark in such a way as to cause confusion, to cause mistake, to deceive as to affiliation, connection, or association of Defendants' Accused Shoulder Device and Accused Knee Device with Plaintiff, and/or its affiliated entities, or as to the origin, or falsely designate the origin, sponsorship or approval of Defendants' goods, services, or other commercial activities by ERMI, and therefore constitutes false designation of origin and unfair competition.

54.     On information and belief, Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect have previously made, and are presently making, false and misleading representations of fact in commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of ERMI's goods.

55.     On information and belief Defendants Mr. Marti, Rehab, T-Rex Investment, Mr. Greene, Mr. Smith, and OneDirect have previously passed-off clinical research conducted by or on behalf of ERMI using ERMI devices as their own in commerce via at least print and/or online media.

56.     On information and belief, Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect have previously and are presently distributing brochures and other print and/or online media which contain identical copies of one or more of ERMI's copyrighted photograph(s).

9

## JURISDICTION AND VENUE

57.     This Action consists of several actions which have been transferred to this Court for pretrial purposes pursuant to 28 U.S.C. § 1407. In particular, this action includes cases transferred and consolidated from the Southern District of Florida: ERMI LLC v. Team Post Op, Inc. et al., No. 0:19-cv-60851-RKA (S.D. Fla. 2019); the Eastern District of North Carolina, ERMI LLC v. Northstate Surgical Devices et al., No. 5:19-cv-00124-D (E.D.N.C. 2019); the Northern District of Illinois, ERMI LLC v. Graymont Equipment Distribution, LLC et al., No. 1:19-cv-02217 (N.D. Ill. 2019); the Eastern District of Michigan, ERMI LLC v. Detroit Medical Devices, LLC et al., No. 2:19-cv-10966-TGB-MKM (E.D. Mich. 2019); the Northern District of Georgia, OneDirect Health Network, Inc. v. ERMI LLC, No. 1:19-cv-01527-JPB (N.D. Ga. 2019); the District of New Jersey, ERMI LLC v. Kaiser Medical, Inc. et al. No. 1:19-cv-20716-RBK-JS (D.N.J. 2019); the Northern District of Georgia, ERMI LLC v. Jeffrey Smith, No. 1:20-cv-01474-JPB; and the Northern District of Georgia, ERMI LLC v. Thomas H. Greene, No. 1:20-cv-01476-JPB  (each of these district courts are collectively and hereinafter referred to as the "Transferor Districts").

58.     Additionally, this action includes actions for patent infringement, false designation of origin, and trademark infringement against Mr. Welch, Mr. Long, CMS Medical, Mr. Hegwood (SC), Mr. Trumble, Mr. Bone, Absolute, Mr. West, Mr. Hegwood (AL), KPM2, Mr. Levitt, Medfocus, Premier Orthopedic, Tyson & Carter, Cade, Great American, SE Medical, Soma Medical, SOS Medical, Mr. Duty, Orthopedics Intl., Decker Medical, PointClear, IASO, and SGR Medical.

59.     All of the actions involving the '289 Patent and the Accused Shoulder Device have been transferred to this Court for pretrial purposes from the Transferor Districts via the

multidistrict litigation statute, 28 U.S.C. § 1407, by order of the Judicial Panel on Multidistrict Litigation ("JPML"). **Exhibit 13**. Accordingly, venue is appropriate in this District and this Court has jurisdiction over all pretrial proceedings pursuant to 28 U.S.C. § 1407 and the Order of the JPML.

60.     Each one of the Transferor Districts has subject matter jurisdiction over each of the actions pursuant to 28 U.S.C. §§ 1331 and 1338 (a) and (b) both because the actions involve a federal question and also because the actions involve patents.

61.     Because the amount in controversy in each of the actions in each of the Transferor Districts exceeds $75,000, and because Plaintiff and Defendants are diverse parties (with the exception of the Florida Action, the Georgia Declaratory Judgment Action, and the Georgia Actions against Mr. Smith and Mr. Greene where ERMI and the OneDirect Defendants all reside in Georgia), each of the Transferor Districts also has original jurisdiction pursuant to 28 U.S.C. § 1332.

62.     This Court has *in personam* jurisdiction over Defendant Mr. Marti both because of the JPML Order and also because he resides in this District and engaged in patent infringement in this District.

63.     This Court has *in personam* jurisdiction over Defendant Team Post Op both because of the JPML Order and also because Team Post Op is incorporated in this state, conducts business in this district, and is engaged in patent infringement, trademark infringement, and unfair competition in this District.

64.     This Court has *in personam* jurisdiction over Defendant Rehab both because of the JPML Order and also because Rehab is organized in this state, conducts business in this

district, and is engaged in patent infringement, trademark infringement, unfair competition, false advertising, reverse passing-off, and copyright infringement in this District.

65.     This Court has *in personam* jurisdiction over Defendant T-Rex Investment both because of the JPML Order and also because Rehab, which is located in this state, is a company of T-Rex Investment, and T-Rex Investment, Rehab, and OneDirect operate as a single entity, such that T-Rex Investment and OneDirect control Rehab's business in this District and patent infringement in this District. Further, T-Rex Investment has engaged in trademark infringement, unfair competition, false advertising, reverse passing-off, and copyright infringement in this District. Further, on information and belief, Mr. Marti who is or was previously the "National Sales Director" for OneDirect, which owns T-Rex Investment, resides in this District and currently or previously conducted marketing on behalf of OneDirect in this District.

66.     This Court has *in personam* jurisdiction over Defendant OneDirect both because of the JPML Order and also because Rehab, which is located in this state, is a company of OneDirect, and OneDirect, T-Rex Investment, and Rehab operate as a single entity, such that OneDirect and T-Rex Investment control Rehab's business in this District and patent infringement in this District.  Further, OneDirect has engaged in trademark infringement, unfair competition, false advertising, reverse passing-off, and copyright infringement in this District. Further, on information and belief, Mr. Marti who is or was previously the "National Sales Director" for OneDirect, which owns T-Rex Investment, resides in this District and currently or previously conducted marketing on behalf of OneDirect in this District.

67.     This Court has *in personam* jurisdiction over Defendant Mr. Smith and Defendant Mr. Greene because they are currently or were formerly officers and/or managers of Defendant OneDirect which, as alleged above operates as a single entity together with Rehab, such that

OneDirect and T-Rex Investment control Rehab's business in this District and patent infringement in this District. Mr. Smith and Mr. Greene have also contracted with entities and individuals in this District including Mr. Marti. Mr. Smith and Mr. Greene have directed and induced OneDirect and T-Rex Investment to violate the patent act in this District.

68.     This Court has *in personam* jurisdiction over Defendant Kinnick both because of the JPML Order and also because, on information and belief, Kinnick has entered into distributorship agreements regarding the Accused Shoulder Device, the Accused Knee Device, and other devices with OneDirect and T-Rex Investment which together with Rehab, a resident of this District, operate as a single entity.

69.     This Court has *in personam* jurisdiction over Defendant Kaiser Medical both because of the JPML Order and also because, on information and belief, Kaiser Medical has entered into purchase and/or distributor agreements with Rehab, a resident of this District, OneDirect, and T-Rex Investment which together operate as a single entity.

70.     This Court has *in personam* jurisdiction over Defendant Mr. Kaiser because of the JPML Order, because Mr. Kaiser jointly designed the Accused Shoulder Device with Mr. Marti in this District, and also because Mr. Kaiser together with Kaiser Medical has entered into purchase and/or distributor agreements with Rehab, a resident of this District, OneDirect, and T-Rex Investment which together operate as a single entity.

71.     This Court has *in personam* jurisdiction over Defendant Detroit Medical both because of the JPML Order and also because, on information and belief, Detroit Medical has entered into distributorship agreements regarding the Accused Shoulder Device, the Accused Knee Device, and other devices with OneDirect and T-Rex Investment which together with Rehab, a resident of this District, operate as a single entity.

72.     This Court has *in personam* jurisdiction over Defendant Mr. Jones both because of the JPML Order and also because, on information and belief, Mr. Jones as an officer and owner of Detroit Medical has entered into distributorship agreements regarding the Accused Shoulder Device, the Accused Knee Device, and other devices with OneDirect and T-Rex Investment which together with Rehab, a resident of this District, operate as a single entity.

73.     This Court has *in personam* jurisdiction over Defendant Northstate both because of the JPML Order and also because, on information and belief, Northstate has entered into distributorship agreements regarding the Accused Shoulder Device, the Accused Knee Device, and other devices with OneDirect and T-Rex Investment which together with Rehab, a resident of this District, operate as a single entity.

74.     This Court has *in personam* jurisdiction over Defendant Ms. Coppedge both because of the JPML Order and also because, on information and belief, Ms. Coppedge, as an officer and owner of Northstate, has entered into distributorship agreements regarding the Accused Shoulder Device, the Accused Knee Device, and other devices with OneDirect and T-Rex Investment which together with Rehab, a resident of this District, operate as a single entity.

75.     This Court has *in personam* jurisdiction over Defendants Mr. Welch, Mr. Long, CMS Medical, Mr. Hegwood (SC), Mr. Trumble, Mr. Bone, Absolute, Mr. West, Mr. Hegwood (AL), KPM2, Mr. Levitt, Medfocus, Premier Orthopedic, Tyson & Carter, Cade, Great American, SE Medical, Soma Medical, SOS Medical, Mr. Duty, Orthopedics Intl., Decker Medical, PointClear, IASO, and SGR Medical because each of the respective Distributor Defendants has entered into distributorship agreements regarding the Accused Shoulder Device, the Accused Knee Device, and other devices with OneDirect and T-Rex Investment which together with Rehab, a resident of this District, operate as a single entity. *In personam*

14

jurisdiction also exists as to each of these Defendants because they have stipulated to "waiving all personal jurisdiction and venue objections to the Consolidated MDL Complaint for discovery and pretrial purposes, including any proceeding governed by or subject to the MDL, only." [DE 37 at 2].

76.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all other claims asserted or that may be asserted that are so related to claims within the original jurisdiction of this action that they form part of the same case or controversy under Article III of the United States Constitution.

77.    Venue is proper in this judicial district pursuant to both the JPML Order and to 28 U.S.C. §§ 1391 and 1400 because Defendants Mr. Marti, Team Post Op, and Rehab are entities that have their principal places of business in this district and because a substantial part of the events giving rise to ERMI's claims occurred in this District, namely Defendants' making, using, selling, leasing, offering for lease, and/or offering to sell and distribute products that infringe the '289 Patent, and Defendants' commercial advertising and promotion containing false and misleading representations about the nature, characteristics, and qualities of ERMI's goods.

78.    Venue is also proper in this District because the Marti Defendants and the OneDirect Defendants by virtue of their single business entity operations with Rehab operate and/or control a physical place in this district, including 1671 Northwest 144th Terrace #111, Sunrise, FL 33323 and/or 14133 NW 8th St., Sunrise, FL 33325. On information and belief, Defendants, including Defendants OneDirect and T-Rex Investment, regularly transact business out of one or both of these locations.  On information and belief, Accused Shoulder Devices, Accused Knee Devices, and/or other devices, owned by OneDirect and/or T-Rex Investment are presently and/or have been previously stored in either or both of these locations prior to use as

well as in between uses by patients.  On information and belief, Mr. Marti has previously and/or presently holds the title of "National Sales Director" with OneDirect and has conducted sales on behalf of OneDirect in this District out of a physical place controlled by OneDirect in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### *The '289 Patent*

79.     Dr. Thomas P. Branch (hereinafter "Dr. Branch") is a board certified orthopedic surgeon who has practiced with TREX Orthopedics, P.C. (hereinafter "TREX Orthopedics"), in Decatur, Georgia. Dr. Branch is the sole owner of TREX Orthopedics, P.C. which he formed in May 1995. **Exhibit 14**. With his over 30 years of experience, more than 30 published papers, and approximately 20 pending and published patents, Dr. Branch is an innovator in his field.

80.     Dr. Branch invented the ERMI program – a line of, *inter alia*, patented shoulder, knee, ankle, and elbow extension control devices to aid in physical rehabilitation and range of motion restoration following surgery or injury.

81.     One of Dr. Branch's inventions includes a new and useful Shoulder Extension Control device and method for which he filed a United States provisional application on December 13, 2001.

82.     One year later, on December 13, 2002, Dr. Branch filed a United States Non-Provisional Patent Application having Serial No. 10/318,988 (hereinafter the "Application"). The Application claimed priority to the provisional patent application.

83.     Dr. Branch assigned the Application, and any patents issuing therefrom, to ERMI. The assignment included all rights under the patents including the right to sue for past infringement.

84.     The Application published to the public on July 10, 2003.

85.     Prosecution commenced in the United States Patent and Trademark Office ("Patent Office") and the Patent Office issued a first office action on January 13, 2006, in which Claims 1 through 6 of the Application were allowed and declared patentable by the Patent Office.

86.     Prosecution continued as to the remaining claims in the Application. The Patent Office never rejected Claims 1 through 6.

87.     On March 16, 2009, the Patent Office issued a notice of allowance indicating that Claims 1 through 6 remained allowable and that Claims 31 through 46 were also allowable.

88.     The Patent Office issued United States Patent No. 7,547,289, the '289 Patent, as shown in **Exhibit 1**, on June 16, 2009 with 22 total claims.

89.     Exemplary Independent Claim 1 of the '289 Patent is directed to:

An apparatus for manipulating the shoulder joint of the left or right arm of a human user, said apparatus comprising:

a frame including spaced apart first and second mounting locations;

an arm carriage configured to manipulate said shoulder joint of said user, said arm carriage configured to be mounted to one of said first and second mounting locations of said frame;

a power unit configured to provide power upon control by said user, said power unit configured to be mounted to the other of said first and second mounting locations of said frame;

a linkage intermediate said arm carriage and said power unit, said linkage configured to transfer power from said power unit to said arm carriage;

said arm carriage, said power unit, and said linkage configured to allow said arm carriage and said power unit to be switched between said first and second mounting locations and operated in alternating modes, such that in a first operating mode said arm carriage can manipulate the right arm of said user, and such that in a second operating mode said arm carriage can manipulate the left arm of said user.

90.      Exemplary Independent Claim 22 of the '289 Patent is directed to:

A method of manipulating the shoulder of a user while seated in a substantially upright position, said user having an upper arm and a forearm, said method comprising the steps of:

A) providing an apparatus itself comprising:

1) a frame;

2) a seat for a user to sit in such that said user can sit in said seat in said substantially upright sitting position while facing a direction substantially along a first axis, said axis being substantially horizontal;

3) an upper arm assembly pivotably mounted relative to said frame about a second axis, said second axis being substantially parallel to said first axis; and

4) a forearm assembly pivotably mounted relative to said upper arm assembly about a third axis and configured to capture the forearm of the user during manipulation of the arm of the user, said third axis being substantially orthogonal to said second axis;

B) securing the forearm of a user to said forearm assembly;

C) selectively discouraging relative movement of said forearm assembly with respect to said upper arm assembly while at the same time allowing said upper arm

assembly and said forearm assembly to both pivot together relative to said frame about said second axis;

D) pivoting said upper arm assembly about said second axis relative to said frame while at the same time said relative movement of said forearm assembly with respect to said upper arm assembly is discouraged such that abduction/adduction of the shoulder is created;

E) selectively discouraging relative movement of said upper arm assembly with respect to said frame while at the same time allowing relative movement of said forearm assembly relative to said upper arm assembly and said frame about said third axis; and

F) pivoting said forearm assembly about said third axis with respect to said upper arm assembly and with respect to said frame while at the same time said relative movement of said upper arm assembly with respect to said frame is discouraged such that external rotation is created at said shoulder.

91.     The First Maintenance Fee for the '289 Patent was paid on October 1, 2012.

92.     The Second Maintenance Fee for the '289 Patent was paid on December 1, 2016.

93.     The '289 Patent is valid and enforceable.

### *ERMI's TREX Mark*

94.     Dr. Branch, TREX Orthopedics, and ERMI have continuously used the TREX mark in commerce in connection with Dr. Branch's orthopedic practice as well as educational services since at least 1996.  Further, as an innovator in his field, Dr. Branch regularly offers his services of presentations, talks, and speeches on the topics of orthopedics, orthopedic surgery, and sports medicine under the TREX mark, a service he offers and/or provides throughout the country. The TREX mark is widely recognized in the orthopedics field in connection with Dr.

Branch, TREX Orthopedics, and ERMI as is evidenced by recognition on numerous websites. **Exhibit 15**.

95.     On November 4, 2019, TREX Orthopedics assigned all rights, title, interest, and goodwill in and to the TREX mark, including all common law rights, to ERMI. **Exhibit 16**.  The assignment included all rights under the trademark including the right to bring actions and recover for past infringement.

96.     On November 18, 2019, ERMI filed a Trademark Application with the United States Patent and Trademark Office to register the TREX mark. The USPTO application has been assigned Serial No. 88696427.

97.     On November 25, 2019, ERMI filed a Trademark Application with the state of Georgia in order to register the TREX mark in Georgia.

98.     On December 4, 2019, the Georgia Secretary of State officially registered ERMI's TREX mark. *See* **Exhibit 5**.

### *ERMI's ORBIT Mark*

99.     In 2004, Dr. Branch invented a new medial subacrominal suture passer for use, *inter alia*, in rotator cuff surgery.

100.     On March 3, 2004, Dr. Branch formed Orbit Surgical Equipment, LLC (hereinafter "Orbit Surgical"), a Georgia Limited Liability Company with principal places of business located at 441 Armour Pl., Suite A, Atlanta, GA, 30324. **Exhibit 17**. Orbit Surgical was formed in order to manufacture, market, and distribute Dr. Branch's new suture passer which Dr. Branch named and marketed under the ORBIT™ mark.

101.     Dr. Branch's Orbit™ device allows for a medial approach to rotator cuff surgery. A single instance of Dr. Branch's Orbit™ device was used in at least 140 consecutive cases. This

use was presented at the International Society of Arthroplasty, Knee Surgery and Orthopeadic Sports Medicine.

102.    On November 4, 2019, Orbit Surgical assigned all rights, title, interest, and goodwill in and to the ORBIT mark, including all common law rights, to ERMI. **Exhibit 18**. The assignment included all rights under the trademark including the right to bring actions and recover for past infringement.

103.    On November 18, 2019, ERMI filed a Trademark Application with the United States Patent and Trademark Office to register ERMI's ORBIT mark. The USPTO application has been assigned Serial No. 88696447. *See* **Exhibit 2**.

104.    On January 15, 2020, the Georgia Secretary of State officially registered ERMI's TREX mark. **Exhibit 3**.

### *ERMI's Devices*

105.    ERMI is a company that manufactures and sells medical devices throughout the United States. The name ERMI is an acronym that stands for "End Range Motion Improvement."

106.    Many of ERMI's devices are shown and cataloged on ERMI's website, www.getmotion.com.

107.    ERMI advertises its products on its website, in videos, in printed media, via word of mouth as well as in connection with seminars, trade shows, symposia, conferences, and the like.

108.    One of these products is the ERMI Shoulder Flexionater® device which is designed to increase motion for those with restricted external rotation, abduction, flexion, and internal rotation. **Exhibit 19**.

109.    ERMI has made in excess of 1,400 ERMI Shoulder Flexionater® devices.

110.   ERMI also makes a number of different devices for the knee. One such device is the ERMI Knee Flexionater® device. **Exhibit 20**.

111.   ERMI also makes devices for ankles. One such device is the ERMI Ankle Flexionater®. **Exhibit 21**.

112.   ERMI has made in excess of 2,400 ERMI Knee and Ankle Flexionater® devices.

113.   The ERMI Shoulder, Knee, and Ankle Flexionater® devices are distributed directly by ERMI through a network of sales representatives across the country.

114.   The ERMI Shoulder, Knee, and Ankle Flexionater® devices have been tested and the results of the testing have been published.

115.   Each ERMI Shoulder Flexionater® device is covered by the claims of the '289 Patent and each ERMI Shoulder Flexionater® device is marked with the '289 Patent number. **Exhibit 22**.

116.   ERMI's website publically states and puts the public on notice that its devices are patented.

117.   In addition to showing the images, descriptions, and videos of the ERMI Shoulder, Knee, and Ankle Flexionater® devices on its website, ERMI exhibits the ERMI Shoulder, Knee, and Ankle Flexionater® devices at trade shows around the country.

### *ERMI's Clinical Research*

118.   Generally, clinical research is a component of medical and health research intended to produce knowledge valuable for understanding human disease, preventing and treating illness, and promoting health.

119.   In the area of medical devices of the type invented, manufactured, and marketed by ERMI, doctors, professors, and engineers will clinically study the medical devices for

effectiveness in treating various medical conditions. The results of these clinical studies are often published and peer reviewed.

120.     The cost of clinical studies is significant as is the time investment both by ERMI and others.

121.     Clinical studies, and the published results therefrom, are an important part of medical device commercial enterprises as such studies help to validate the effectiveness of the medical devices which is important to regulatory agencies, medical professionals, prescribing doctors, medical clinics, and patients.

122.     Numerous clinical studies have taken place with respect to ERMI's devices including clinical studies with respect to the ERMI Shoulder Flexionater® device and the ERMI Knee Flexionater® device.

123.     On information and belief, OneDirect, T-Rex Investment, and their principals understand the value, importance, and expense associated with clinical studies.

### The Papotto and Mills Knee Flexionater® Device Study

124.     Basil A. Papotto (hereinafter "Papotto") is a Physical Therapist who previously practiced with TREX Orthopedics.

125.     Timothy Mills (hereinafter "Mills") is a Physician Assistant who previously practiced with TREX Orthopedics.

126.     Pappotto and Mills conducted a randomized clinical trial of the ERMI Knee Flexionater® Device.

127.     ERMI sponsored the Pappotto and Mills Knee Flexionater® Device Study as a part of a multi-site research study. The study published in 2012.

128.    The Pappotto and Mills Knee Flexionater® Device Study published as: Papotto BA, Mills, TJ. Treatment of severe flexion deficits following total knee arthroplasty: A Randomized clinical trial. *Orthopaedic Nursing* 2012; 31(1):29-34.

129.    The Pappotto and Mills Knee Flexionater® Device Study is very valuable to ERMI.

130.    The Pappotto and Mills Knee Flexionater® Device Study shows that the ERMI Knee Flexionater® device performs significantly better than a low intensity device.

### *The Dempsey, Branch, Mills, and Karsch Shoulder Flexionater® Device Study*

131.    Dr. Amanda Dempsey (hereinafter "Dempsey") is an orthopedic surgeon who previously practiced with TREX Orthopedics.

132.     Dr. Robert Karsch (hereinafter "Karsch") is an orthopedic surgeon who previously practiced with TREX Orthopedics.

133.    Dempsey, Branch, Mills, and Karsch conducted a retrospective cohort study to compare range of motion, subjective outcomes, and the prevalence of reoperation in groups of frozen shoulder patients with either low or moderate/high irritability treated with the same total end range time-maximizing protocol.

134.    ERMI sponsored the Dempsey, Branch, Mills, and Karsch Study which utilized the ERMI Shoulder Flexionater® Device. The study published in 2011.

135.    The Dempsey, Branch, Mills, and Karsch Study published as: Dempsey AL, Mills, TJ, Karsch RM, and Branch TP. Maximizing total end range time is safe and effective for the conservative treatment of frozen shoulder patients. *American Journal of Physical Medicine & Rehabilitation* 2011;90(9): 738-745.

24

136.     The Dempsey, Branch, Mills, and Karsch Study showed that the ERMI Shoulder Flexionater® Device is safe and effective in treating patients. An important point in this publication is that the ERMI Shoulder Flexionater® Device can treat patients with low or medium/high irritability in their shoulder with equal effectiveness. This fact is important because it was previously thought that one should not use devices such as the ERMI Shoulder Flexionater® Device or should not stretch the shoulder in patients with high irritability in their shoulder.

137.     The Dempsey, Branch, Mills, and Karsch Shoulder Flexionater® Device Study is very valuable to ERMI.

### The Stephenson, Quimbo, and Gu Knee Flexionater® Device Study

138.     Judith J. Stephenson (hereinafter "Stephenson") is a Research Scientist with HealthCore, Inc. (hereinafter "HealthCore").

139.     Ralph A. Quimbo (hereinafter "Quimbo") is a Vice President of Life Sciences Research at HealthCore.

140.     Tao GU (hereinafter "GU") was previously a Senior Researcher with HealthCore, and is presently an Associate Director of Oncology with Bristol-Myers Squibb.

141.     Stephenson, Quimbo, and GU conducted a clinical study to determine if differences in costs and risks of re-hospitalization and/or re-operation exist between arthrofibrosis patients treated with low intensity stretch (LIS) or high intensity stretch (HIS) mechanical therapies, or physical therapy alone (No Device).

142.     Specifically, the high intensity stretch device used in the Stephenson, Quimbo, and GU study was the ERMI Knee Flexionater® device.

25

143.    Stephenson, Quimbo, and GU published their study as: Stephenson, JJ, Quimbo, RA, and GU, T. Knee-attributable medical costs and risk of re-surgery among patients utilizing non-surgical treatment options for knee and arthrofibrosis in a managed care population. *Current Medical Research & Opinion* 2010; 26(f):1109-1118.

144.    The Stephenson, Quimbo, and GU Study was conducted independently by HealthCore at the request of ERMI and published in 2010.

145.    The Stephenson, Quimbo, and GU Study shows that patients treated with ERMI's Knee Flexionater® Device have a significantly lower risk of rehospitalization and lower knee-attributable medical costs.

146.    The Stephenson, Quimbo, and Gu Knee Flexionater® Device Study is very valuable to ERMI.

### The Uhl and Jacobs Knee Flexionater® Device Study

147.    Dr. Timothy L. Uhl (hereinafter "Dr. Uhl") is the Director of Musculoskeletal Laboratory with the University of Kentucky College of Health Sciences and Dr. Uhl practices physical therapy and athletic training with the University of Kentucky College of Health Sciences.

148.    Dr. Cale A. Jacobs was formerly the Director of Research and Development with ERMI and is presently an Assistant Professor of Research with the University of Kentucky College of Medicine.

149.    Dr. Uhl and Dr. Jacobs conducted a study which measures the force that the ERMI Knee Flexionater® Device can apply on a knee and compares it to other treatment modalities. The study published in 2011.

150.     Dr. Uhl and Dr. Jacob's study was sponsored by ERMI and published as Torque measures of common therapies for the treatment of flexion contractures. *The Journal of Arthroplasty* 2011;26(2):328-334.

151.     The Uhl and Jacobs Knee Flexionater® Device Study is very valuable to ERMI.

### The Palmer, Branch, Mills, and Karsch Knee Flexionater® Device Study

152.     Dr. Branch, Dr. Karsch, Mills, and Marissa T. Palmer (hereinafter "Palmer") conducted a study which tested whether adding home mechanical therapy to traditional physical therapy by a physical therapist would significantly reduce the need for surgical management of loss of knee flexion after surgery or injury.

153.     The study by Dr. Branch, Dr. Karsch, Mills, and Palmer showed that treatment using the ERMI Knee Flexionater® Device is safe and effective. The study published in 2003.

154.     The study published as: "Branch, TP, Karsch, RE, Mills, TJ, and Palmer MT. Mechanical therapy for loss of knee flexion. The American Journal of Orthopedics 2003;32(4):195-200.

155.     The Palmer, Branch, Mills, and Karsch Knee Flexionater® Device Study is very valuable to ERMI.

### Mr. Eduardo M. Marti Visits ERMI

156.     Mr. Marti and Mr. Kaiser were formerly and/or are presently business associates.

157.     In 1994, Mr. Marti pleaded guilty to the following crimes in the State of Florida: "Organized Fraud"; "Grand Theft"; and "Scheme to Defraud".

158.     The criminal complaint against Mr. Marti includes the following statement: "A report was also filed by attorney DARIN LENTNER who worked [for Marti] at the Center for a

short time in February 1992. He felt that the business was not on the up and up and filed a report and left the company."

159.    The criminal complaint against Mr. Marti includes the following statement:

All [of Marti's] victims believed Marti to be a lawyer (he attended Nova Law School but is not a member of the BAR)…they all believed that he would clear up their credit report (no one had any of their bad credit clearned [SIC] up)…all were told by Marti a variety of excuses as to why it was taking so long (he was sick, he was mugged, he was out of town, he was short staffed)…none were advised of Marti's move. They all called his number and found it disconnected Marten and Bennett heard the ad for National Law Credit Center and feeling it was similar called it and found that Marti was working at this center.

160.    Mr. Marti contacted ERMI on November 7, 2013 via email seeking to sell distribution rights to an unrelated product.

161.    Mr. Marti and Mr. Kaiser met with ERMI on December 13, 2013 and visited Dr. Branch's office at TREX Orthopedic.

162.    On information and belief, Mr. Kaiser met with ERMI in his individual capacity, separate and apart from Kaiser Medical.

163.    ERMI later learned that neither Mr. Marti nor Mr. Kaiser had the right to offer for sale the devices that were the subject of their pitch to ERMI.

164.    ERMI devices and related literature, including the ERMI Shoulder Flexionater® device and related literature, the ERMI Knee Flexionater® device, and the ERMI Ankle Flexionater® Device were on display at TREX Orthopedic during Mr. Marti's and Mr. Kaiser's visit on December 13, 2013. Mr. Marti and Mr. Kaiser were exposed to both ERMI's TREX mark, the ERMI Shoulder Flexionater® device, the ERMI Knee Flexionater® device, and the ERMI Ankle Flexionater® device during their visit.

165.    On information and belief, Mr. Kaiser and Mr. Marti observed the ERMI Shoulder Flexionater® device, the ERMI Knee Flexionater® device, the ERMI Ankle Flexionater® device, and related literature during their visit to TREX Orthopedic.

166.    On information and belief, Mr. Kaiser and Mr. Marti observed the patent markings showing the '289 patent number on the ERMI Flexionater ® device.

167.    On information and belief, Mr. Kaiser and Mr. Marti were familiar with ERMI's clinical research studies relating to ERMI's Shoulder Flexionater® Device and ERMI's Knee Flexionater® Device.

168.    When ERMI tried to follow-up with Mr. Marti and Mr. Kaiser after the meeting, Mr. Kaiser informed ERMI for the first time that in fact he could not work with ERMI due to a non-compete agreement with another company.

169.    On information and belief, both Mr. Marti and Mr. Kaiser knew at the time they visited ERMI that they did not have the rights to work with ERMI as they proposed.

### *Mr. Kaiser, Mr. Marti and their Dispute with Lantz Medical, Inc.*

170.    Less than one month after Mr. Kaiser and Mr. Marti's visit to TREX Orthopedic, Mr. Kaiser was sued by Lantz Medical, Inc. (hereinafter "Lantz Medical") in the United States District Court for the District of Indiana (hereinafter the "Lantz Action"). **Exhibit 23**.

171.    On information and belief, because of the Lantz Action and the public filings in PACER, Mr. Kaiser was compelled to tell ERMI about the non-compete agreement.

172.    In the Lantz Action, Lantz Medical alleged, *inter alia*, that it entered into an asset purchase agreement with Mr. Kaiser and a non-compete agreement with Mr. Kaiser.

173.    In the Lantz Action, Lantz Medical alleged that Mr. Kaiser, Mr. Marti, and Team Post Op, among others, worked together to unfairly compete with Lantz Medical.

174.     In the Lantz Action, Lantz Medical accused Mr. Kaiser of, *inter alia*, breaching

that agreement as follows:

> During the Non-Compete Period, Kaiser solicited orders for, designed, made, produced, manufactured, sold, distributed, or otherwise marketed products, goods, equipment, and/or services that Lantz makes, produces, sells, leases, rents, distributes, or markets.

> Specifically, Lantz has been informed that Kaiser has and continues to work with Ed Marti ("Marti") and his company, Team Post-Op, Inc. ("Post-Op"), to develop a line of splints competitive with Lantz's Stat-A-Dyne splint.

> Lantz has also been informed that Kaiser has and continues to work with Marti and Post-Op to develop products competitive with Lantz's WHFO / Vector 1 products.

> Lantz has also been informed that Kaiser and his son, Matt Kaiser ("Matt"), created a company that develops and sells other products competitive with Lantz's products to Marti and Post-Op.

> Upon information and belief, Kaiser and Matt have entered into a consulting relationship with Marti and/or Post-Op for the purpose of developing and selling products competitive with Lantz's products.

> Upon information and belief, Kaiser undertook planning to conduct business activity competitive to Lantz and utilized Lantz's confidential information in the preparation to compete and in competition with Lantz for sales in the Restricted Territory.

**Exhibit 23** at ¶¶17-22. Lantz Medical, Inc. v. Robert Kaiser, No. 1:14-cv-00021-TWP-TAB

(S.D. Ind. Jan. 9, 2014).

### *T-Rex Accused Shoulder, Knee, Ankle, and Hip Devices*

175.     Within months after Mr. Marti's and Mr. Kaiser's meeting with ERMI at TREX

Orthopedic in December 2013, and while the Lantz Action was pending, Mr. Marti founded a

company named T-Rex Rehab, LLC in May 2014.

176.     Rehab is a Florida limited liability company with the same address as Mr. Marti,

namely 19274 South Hibiscus Street, Weston, Florida 33332.

177.    On June 4, 2014, Mr. Marti and Mr. Kaiser filed United States Provisional Patent Application No. 62/007,541 directed to a Powered Knee Exerciser. On August 27, 2014, Mr. Marti and Mr. Kaiser filed United States Provisional Patent Application No. 62/042,399 directed to a 3 Axis Actuator Driven Therapy Shoulder Device. On March 18, 2015, Mr. Marti and Mr. Kaiser filed United States Provisional Patent Application No. 62/134,633 directed to Knee and Shoulder Exercisers. Mr. Marti and Mr. Kaiser assigned each of these three provisional applications to Rehab. Both Mr. Marti and Mr. Kaiser are listed as co-inventors of each of the patent applications.

178.    Based on these provisional patent applications, Mr. Marti and Mr. Kaiser also filed several non-provisional patent applications, which were also assigned to Rehab.

179.    During the prosecution of Mr. Marti's and Mr. Kaiser's non-provisional patent applications, Mr. Marti and Mr. Kaiser filed Information Disclosure Statements which, *inter alia*, included citations to ERMI's website, www.getmotion.com. **Exhibit 24**.

180.    This citation to ERMI's intellectual property appears on the face of numerous patents obtained by Mr. Marti, Mr. Kaiser, Rehab, T-Rex Rehab, and OneDirect and includes at least: US Patent No. 9,669,249; US Patent No. 10,220,234; and US Patent No. 10,293,198.

181.    On information and belief, Mr. Kaiser in his individual capacity and later through his company Kaiser Medical, and Mr. Marti in his individual capacity and later through his companies Rehab and Team Post Op, then went on to sell a line of joint extension control devices that directly compete with ERMI's devices under the infringing "T-REX" mark within months of their visit to ERMI.

182.    The Accused Devices made and distributed by Rehab and all Defendants include the Accused Shoulder Device, the Accused Knee Device, the Accused Hip Device, and The Accused Ankle Device.

183.    On information and belief, the Accused Devices are offered for sale and/or leased and sold and/or leased through a network of distributors, the Distributor Defendants, each of which has entered into a distributor agreement with OneDirect in Georgia and consenting to jurisdiction in the state of Georgia.

184.    On information and belief, when one of the Distributor Defendants sells and/or leases one of the Accused Devices to a third party medical provider or patient, the particular Accused Device which has been leased is shipped from the state of Georgia to the location of the Distributor and/or the third party medical provider or patient. On information and belief, the Accused Devices are shipped in vehicles which display to the public the infringing T-Rex mark.

185.    On information and belief, Mr. Marti has been and is involved in the advertising activities of Rehab including publication of brochures, internet publications, and trade show exhibits. Mr. Marti is now or was previously the "National Sales Director" of OneDirect.

186.    Rehab advertises the Accused Shoulder Device on its website at https://trexrehab.com/t-rex-orbit-for-shoulder/, the Accused Knee Device, the Accused Ankle, and the Accused Hip Device on its website at https://trexrehab.com/t-rex-machines/.

187.    Rehab's website includes citations to the same clinical research that tested and commented on the ERMI devices.

188.    Rehab's website cites to at least the following ERMI clinical studies: The Papotto and Mills Study; The Stephenson, Quimbo, and GU Study; and The Uhl and Jacobs Study. **Exhibit 25.** Notably, the Rehab website misspells Dr. Uhl's name as "Uhi."

189.    Rehab and OneDirect's brochure also cites to at least the following ERMI clinical studies: The Papotto and Mill Study; The Dempsey, Branch, Mills, and Karsch Study; The Stephenson, Quimbo, and GU Study; The Uhl and Jacobs Study; and the Palmer, Branch, Mills, and Karsch Study. **Exhibit 32**. Notably, the Rehab/OneDirect brochure misspells Dr. Uhl's name as "Uhi" and Dr. Karsch's name as "Kairsh."

190.    At least one or more TREX distributors have cited to ERMI's clinical research in advertising of the Accused Shoulder Device and the Accused Knee Device. **Exhibit 27**.

191.    Rehab's advertisements, including those on its website, include videos showing the Accused Shoulder Device, the Accused Knee Device, and the Accused Ankle Device being used by a person.

192.    Rehab's advertisements include commercial brochures which have been distributed to consumers identifying Rehab as the source of the Accused Shoulder Device and the Accused Knee Device. *See, e.g.*, **Exhibit 26 and Exhibit 32**.

### *OneDirect's Relationship with Rehab, Mr. Marti, Mr. Kaiser, and Kaiser Medical*

193.    On information and belief, on March 9, 2016, at least a portion of Rehab's assets, including certain patents, patent applications, and distribution channels related to the T-Rex products, were purchased by T-Rex Investment, Inc. (hereinafter "T-Rex Investment"), a Georgia corporation with principal offices located at 2964 Peachtree Road NW, Suite 400, Atlanta, Georgia, 30305.

194.    T-Rex Investment was formed in September 2015.

195.    On information and belief, T-Rex Investment was formed as an acquisition company by OneDirect Health Network, Inc. ("OneDirect") for the purpose of acquiring Rehab.

196.     On information and belief, as part of its acquisition of Rehab assets including patents, OneDirect and T-Rex Investment learned of the prosecution history of Mr. Marti's and Mr. Kaiser's patent application including the information disclosure filed by Mr. Marti and Mr. Kaiser identifying the ERMI devices as prior art relevant to patentability.

197.     Mr. Marti signed the asset purchase agreement from Rehab to T-Rex Investment stating: "2.10 Past Behavior. The Seller [Rehab] nor Eduardo Marti, has ever been convicted of, or entered a plea of guilty or nolo contendere with respect to, felony charges or any crime involving either moral turpitude …."

198.     On information and belief, after learning about the history of the Marti and Kaiser patents, OneDirect purchased 77% of T-Rex Investment.

199.     T-Rex Investment was listed as the applicant and/or the assignee on at least US Patent Nos. 9,669,249; 10,220,234; and 10,293,198. Each of these patents explicitly list ERMI's website and the devices displayed thereon as prior art references. As applicant and/or assignee of these patents, T-Rex Investment had knowledge of or was willfully blind to the existence of the ERMI devices and the '289 Patent.

200.     On information and belief, OneDirect and T-Rex Investment knew that Mr. Kaiser had been sued in his individual capacity by Lantz Medical which had previously completed an asset purchase of the assets of Kaiser Medical and entered into a non-compete with Mr. Kaiser.

201.     On information and belief, OneDirect and T-Rex Investment knew that Mr. Marti was named as working with Mr. Kaiser in the Lantz Action.

202.     On information and belief, OneDirect and T-Rex Investment knew that Mr. Marti and Mr. Kaiser had been accused of selling and offering to sell products for which they had no rights and were contractually obligated not to sell or offer to sell.

203.     OneDirect identifies Rehab as one of its "Companies" on its website, https://mackenzie-patsey-cepr.squarespace.com/, stating that it works with Rehab "from inception to distribution." OneDirect's website links to Rehab's website, trexrehab.com, identified above, where Rehab advertises the Accused Device.  **Exhibit 28**.

204.     On February 17, 2016, Mr. Kaiser and Kaiser Medical sent an invoice for 7 "T-Rex" shoulder devices to OneDirect noting that the devices were being shipped to "Dave Long" at 523 W. Algonquin Arlington Heights, IL 60005. **Exhibit 29.**

205.     Also on February 17, 2016, Mr. Kaiser and Kaiser Medical sent an invoice to OneDirect for an additional 49 "T-REX" shoulder devices noting that the devices were being shipped to: "Kip Bembry" at 604 Birkdale Ct. Martiez [SIC], GA 30907; Dave Long at 523 W. Algonquin, Arlington Heights, IL 600005 [SIC]; and to "Mark Levitt, OneDirect" at 1755 West Oak Parkway, Marietta, GA 30062. **Exhibit 30.** The purchase price for these machines "FOB Southampton, NJ" totaled $134,120.00.

206.     In April 2016, OneDirect stated in a memorandum as follows:

Competition:

Our primary competition for the TREX line of products is Atlanta-based End Range Motion Improvement or ERMI (www.getmotion.com). The company is privately-held. ERMI manufactures and distributes products under the ERMI brand, such as the ERMI Knee Extensionater®, ERMI MPJ Extensionater®, ERMI Shoulder Flexionater® and the ERMI Elbow Extensionater® II. The Company has conducted 26 separate physician interviews, 17 separate distributor interviews and 6 visits to Veterans Administration facilities in our target market. Our findings indicate that ERMI has significant service related issues with the Veterans Administration and independent Physicians. Additionally, after careful inspection of the ERMI line of products we believe them to be substandard in

manufacturing quality and design. The flagship ERMI Knee (Ankle) Flexionater® includes a garden-variety folding chair as part of the apparatus. Further, none of the ERMI products are Wi-Fi or Bluetooth enabled to facilitate any form of data tracking or Physician monitoring.

207.    OneDirect has "careful[ly] inspect[ed] the ERMI line of products" including the ERMI Shoulder Flexionater® device.

208.    ERMI distributes the ERMI Shoulder Flexionater® devices with '289 patent number affixed thereon. *See* **Exhibit 22.**

209.    On information and belief, OneDirect saw the '289 patent number affixed to the ERMI Shoulder Flexionater® device during their "careful inspection" of the ERMI device.

210.    On information and belief, Mr. Kaiser and Kaiser Medical were and/or are selling the Accused Shoulder Device to OneDirect using the "T-REX" mark and/or the "ORBIT" mark.

211.    Soon after the purchase of these Accused Shoulder Devices, a creditor of OneDirect filed a UCC Financing Statement with respect to the devices OneDirect had just purchased from Mr. Kaiser and Kaiser Medical.

212.    On information and belief, all Defendants have knowledge of and/or are willfully blind to the claims of the '289 Patent.

213.    On information and belief, Defendants Marti, Rehab, T-Rex, and OneDirect operate as a single entity to manufacture, sell, lease, distribute, advertise, and promote the Accused Device.

### *Team Post Op's Distribution of the Accused Devices*

214.    Team Post Op is a distributor of the Accused Shoulder Device and the Accused Knee Device.

215.    Team Post Op sells, offers for sale, leases, and/or offers for lease Rehab's and OneDirect's products, including the Accused Shoulder, Knee, Ankle, and Hip Devices, in Florida, including in this district, and elsewhere.

216.    Mr. Marti is Vice President and CEO of Team Post Op.

217.    On information and belief, Mr. Marti is an owner of Team Post Op.

218.    On information and belief, Mr. Marti has been and is involved in the advertising and promotion activities of Team Post Op.

219.    Team Post Op operates the website www.teampostop.net where it advertises, *inter alia*, the Accused Shoulder, Knee, Ankle, and Hip Devices.

220.    Team Post Op distributes the Accused Shoulder, Knee, Ankle, and Hip Devices and/or other devices which bear the infringing T-Rex mark and the infringing Orbit mark.

221.    Team Post Op's website includes videos demonstrating the operation of the Accused Shoulder, Knee, Ankle, and/or Hip Devices. **Exhibit 31**.

222.    Team Post Op's website states that "[Team Post Op] agrees to properly instruct the patient and/or caregiver on the proper use and maintenance of product(s)."

223.    On information and belief, all distributors instruct the patient and/or caregiver in the same manner as Team Post Op.

224.    Team Post Op has advertised the Accused Shoulder, Knee, Ankle, and Hip Devices at trade shows including at the Workers Compensation Institute.

225.    On information and belief, Team Post Op advertises the Accused Shoulder, Knee, Ankle, and Hip Devices with reference to ERMI's Shoulder Flexionater® device.

226.    On information and belief, Team Post Op has demonstrated the Accused Shoulder, Knee, Ankle, and Hip Devices to customers and potential customers.

227.    On information and belief, Team Post Op has distributed the Accused Shoulder, Knee, Ankle, and Hip Devices to customers.

228.    On information and belief, Team Post Op has knowledge of and/or is willfully blind to the claims of the '289 Patent.

229.    On information and belief, Team Post Op had knowledge of and/or was willfully blind to ERMI's, and ERMI's predecessors in interest's, rights in ERMI's ORBIT mark and ERMI's TREX mark.

### *Mr. Smith's Distribution of the Accused Device*

230.    On information and belief, Mr. Smith—in his capacity as CEO of OneDirect—is a current and/or former distributor of Rehab products, including the Accused Device.

231.    On information and belief, Mr. Smith was a former distributor of Rehab products, including the Accused Device, in his individual capacity and prior to his assuming the role of CEO of OneDirect.

232.    On information and belief, Mr. Smith—in his individual capacity—has personally performed the steps of method Claim 22, either literally or under the Doctrine of Equivalents, of the '289 Patent.

233.    On information and belief, Mr. Smith personally performed the steps of method Claim 22 prior to the formation of OneDirect or T-Rex Investment.

234.    On information and belief, Smith has in the past and/or presently sells, offers for sale, leases, and/or offers for lease Rehab's and OneDirect's products, including the Accused Shoulder, Knee, Ankle, and Hip Devices, throughout the country.

235.    On information and belief, Mr. Smith has demonstrated the Accused Device to customers and potential customers.

236.    On information and belief, Mr. Smith has distributed the Accused Device to customers.

237.    On information and belief, Mr. Smith is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

238.    On information and belief, Mr. Smith has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

239.    On information and belief, Mr. Smith is familiar with the ERMI Shoulder Flexionater® device and has knowledge of and/or is willfully blind to the claims of the '289 Patent.

240.    On information and belief, Mr. Smith is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

241.    On information and belief, Mr. Smith has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Device and other devices, in advertising, and in promotion of the Accused Device and other devices.

### Mr. Greene's Distribution of the Accused Device

242.    On information and belief, Mr. Greene—in his capacity as Chairman of OneDirect—is a current and/or former distributor of Rehab products, including the Accused Device.  On information and belief, Mr. Greene is part of the Defendants' leadership team and was involved in the formation of T-Rex Investment.   Mr. Greene is also listed as an "Incorporator" on the T-Rex Investment formation documents. **Exhibit 34.**  On information and belief, Mr. Greene is involved in Defendants' operations, including but not limited to negotiating

lease agreements for Defendants' office space, recruiting, hiring and onboarding employees, marketing activities including but not limited to promotional videos in which the Accused Shoulder Device is demonstrated, **Exhibit 35** at 20-21, and other promotional materials containing the infringing marks including calendars, prescription pads, and t-shirts.

243.    On information and belief, Mr. Greene has in the past and/or presently sells, offers for sale, leases, and/or offers for lease Rehab's and OneDirect's products, including the Accused Shoulder, Knee, Ankle, and Hip Devices throughout the country.  On information and belief, Mr. Greene worked tirelessly in his role at OneDirect.  On information and belief Mr. Greene has invested both time and personal capital into OneDirect.

244.    On information and belief, Mr. Greene has demonstrated the Accused Device to customers and potential customers.  For example, on information and belief, Mr. Greene has been involved in coordinating demonstrations of the Accused Device to potential customers, including logistics associated with trade shows at which the Accused Device was demonstrated to potential customers.

245.    On information and belief, Mr. Greene has distributed the Accused Device to customers, and/or directed others to do the same.

246.    On information and belief, Mr. Greene is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Device, also shows a photograph of the ERMI Shoulder Flexionater® device. **Exhibit 19**.  For example, on information and belief, Mr. Greene was involved in various aspects of TREX's website (www.trexrehab.com) and in the design of various brochures in which the Accused Shoulder Device was promoted.  **Exhibit 35**.

247.     On information and belief, Mr. Greene has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed, and/or directed others to do the same.

248.     On information and belief, Mr. Greene is familiar with the ERMI Shoulder Flexionater® device and has knowledge of and/or is willfully blind to the claims of the '289 Patent.

249.     On information and belief, Mr. Greene is familiar with ERMI's ORBIT mark and ERMI's TREX mark, including but not limited to as a result of his involvement in Defendants' marketing efforts.  In fact, on information and belief, it was Mr. Greene who selected the ORBIT mark and advocated for its use. **Exhibit 36**.

250.     On information and belief, Mr. Greene has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Device and other devices, in advertising, and in promotion of the Accused Device and other devices.

### *Mr. Marti, Rehab, T-Rex Investment, and OneDirect's False Advertising Statements*

251.     Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's advertisements for the Accused Shoulder and Knee Devices include a commercial brochure that is distributed to customers (hereinafter "Brochure").  **Exhibit 32**.

252.     The Brochure contains references to nine studies, none of which were conducted by any of the Defendants or on any of the Accused Shoulder, Knee, Ankle, and Hip Devices, and seven of which were either conducted by ERMI and/or on ERMI devices.

253.     The Brochure contains a chart of "patient care criteria", comparing the Accused Devices to ERMI's devices. The following statements about the "ERMI Shoulder" device contained in the Brochure are false misrepresentations about ERMI's device:

41

    a.  Does not "allow[] movement thru multiple planes."

    b.  Does not allow "internal and external rotation stretching."

    c.  Is not "[anato]mically aligned along the correct 'axis' for horizontal, rotational, ab/add[uction.]"

    d.  Does not "allow[] for scapular extension."

    e.  Does not "allow[] for retraction motion with int/ext rotation."

254. Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect know these statements regarding ERMI's device to be false.

255. The Brochure contains a second chart of "patient care criteria", comparing the Accused Knee Device to ERMI's device. The following statements about ERMI contained in the Brochure are false misrepresentations about ERMI's device(s):

    a.  Does not "perform flex and extension."

    b.  Does not have "moderate resistance."

    c.  Does not allow "hyperextension."

256. Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect know these statements regarding ERMI's device(s) to be false.

257. The Brochure contains images of three ERMI devices taken from ERMI's website and identifies the ERMI devices as "CPM Devices."

258. The devices shown in the brochure are identifiable as ERMI devices to customers and persons in the industry.

259. "CPM Device" is a term of art understood by those in the medical industry and stands for "continuous passive motion device." CPM Devices have been used for decades to prevent postoperative motion loss immediately after surgery.

260.    CPM Devices must contain certain characteristics, including that the device be electrically powered, which ERMI's devices are not.  CPM Devices are classified under two Healthcare Common Procedure Coding System ("HCPCS") codes: E0935 and E0936.

261.    ERMI's devices are not CPM Devices. ERMI's devices are "High Intensity Stretch" ("HIS") devices used as an adjunct to physical therapy for effective non-operative treatment of patients with severe motion loss.

262.    ERMI's devices are classified under HCPCS codes E1399 or in the E1800 – E1841 series of codes.

263.    Defendants knew or should have known that ERMI's devices are not CPM devices.  The studies on HIS and related devices contained in the Brochure, which Defendants reference, are ERMI studies conducted on ERMI devices.

264.    In April 2016, OneDirect stated in a memorandum as follows: "ERMI does not currently manufacture or distribute a High-Intensity Stretching Device for the Neck or Spine." OneDirect's statement is a tacit acknowledgement that ERMI's devices are in fact "High-Intensity Stretching Device[s]" and not CPM devices as falsely stated in OneDirect's advertising.

### *Defendants' Infringement of ERMI's Copyrighted Photographs*

265.    Defendants Rehab, T-Rex Investment, and OneDirect's Brochure, **Exhibit 26** and **Exhibit 32**, contains three (3) photographs of ERMI devices: one of ERMI's Elbow Extensionater® device; the second of ERMI's Shoulder Flexionater® device; and the third of ERMI's Knee Extensionater® device (collectively, "Photographs").

266.    The three (3) Photographs of ERMI devices contained in the Brochure were each created by professional photographer Tom Meyer in 2011 for ERMI for use in its advertisement of its devices.

267.     Mr. Meyer assigned to ERMI all right, title, and interest in the Photographs, including all rights to and claims for damages, restitution, and injunction and other legal and equitable relief for past, present and future infringement of the Photographs.

268.     The Photographs each constitute an original material that is copyrightable under federal law.  ERMI registered its claim of copyright in each Photograph with the Copyright Office on April 11, 2019, as evidenced by Certificate of Registration VA 2-146-537 (ERMI Arm Device Photograph, a true and correct copy attached as **Exhibit 6**); Certificate of Registration VA 2-146-536 (ERMI Chair Device Photograph, a true and correct copy attached as **Exhibit 7**); and Certificate of Registration VA 2-146-538 (ERMI Leg Device Photograph, a true and correct copy attached as **Exhibit 8**) (collectively, the "Copyrighted Works").  A true and correct copy of the deposit copies of each photograph are attached as **Exhibit 9**.

269.     ERMI first published the Copyrighted Works on January 12, 2012.

270.     The Copyrighted Works are published on ERMI's website, www.getmotion.com, and used in ERMI advertising, marketing, and promotional materials.

271.     Upon information and belief, Defendants Rehab, T-Rex Investment, and OneDirect copied the Copyrighted Works from ERMI's website without ERMI's knowledge or consent.

272.     Upon information and belief, Defendants Rehab, T-Rex Investment, and OneDirect copied or caused to be copied the Copyrighted Works and created or caused to be created derivative works therefrom by using the Copyrighted Works in Defendants Rehab, T-Rex Investment, and OneDirect advertising, marketing, and promotional materials ("Infringing Photographs").

273.    Upon information and belief, Defendants Rehab, T-Rex Investment, and OneDirect knew and/or had reason to know of, and willfully ignored ERMI's copyrights in the Copyrighted Works by using ERMI's Copyrighted Works in their advertising, marketing, and promotional materials.

274.    The Infringing Photographs are exact copies of the Copyrighted Works.

275.    The Infringing Photographs are substantially similar to the Copyrighted Works.

276.    The Infringing Photos are strikingly similar to the Copyrighted Works.

277.    The Infringing Photographs are shown below, left directly adjacent ERMI's copyrighted works below right:

| The Infringing Photographs | ERMI's Copyrighted Photographs |
|---|---|
|  | |



278.    The infringing photos are identical in every respect to the Copyrighted Works.

279.    None of the Defendants had a license to use any of ERMI's Copyrighted Works.

280.    None of the Defendants sought permission from ERMI to use the Copyrighted Works.

281.    The infringing photos were used for a purely commercial purpose, the purpose being the sale of the infringing T-Rex devices.

282.    The infringing photos were used for an improper purpose of false advertising and disparaging ERMI's products.

283.    The infringing photos copied substantially all of the Copyrighted Works.

*Rehab and OneDirect's Reverse Passing-Off*

284.    ERMI has invested considerable time, talent, and financial resources in its clinical research studies.

285.    ERMI's clinical research studies have scientifically evaluated and specifically demonstrated the effectiveness of ERMI's Shoulder Flexionater® Device and ERMI's Knee Flexionater® Device, among other ERMI devices.

286.    On information and belief, Rehab was aware of the ERMI clinical research studies at the time it visited TREX Orthopedic or otherwise became aware of ERMI's clinical research studies shortly thereafter.

287.    On information and belief, OneDirect was aware of the ERMI clinical research studies at or near the time T-Rex Investment purchased the assets of Rehab.

288.    On information and belief, Mr. Smith and Mr. Greene were aware of the ERMI clinical research studies at or near the time T-Rex Investment purchased the assets of Rehab.

289.    A consumer seeing the ERMI clinical research studies cited on the Rehab and/or OneDirect website **Exhibit 25** and/or in the Rehab and/or OneDirect brochure **Exhibit 32** would assume that the research pertained to the Accused Shoulder Device and/or the Accused Knee Device rather than an ERMI device.

290.    Neither OneDirect nor Rehab nor Mr. Greene nor Mr. Smith nor any other of the Defendants purchased, paid for, or contributed in any way to any of the ERMI clinical research studies.

291.    OneDirect, Rehab, and/or other Defendants have misrepresented ERMI's clinical research studies as their own and/or as applicable to the Accused Shoulder Device and/or the Accused Knee Device.

292.    Mr. Greene – in his capacity as Chairman of OneDirect – has misrepresented ERMI's clinical research studies as applicable to the Accused Shoulder Device and/or the Accused Knee Device.

293.    Mr. Smith – in his capacity as CEO of OneDirect – has misrepresented ERMI's clinical research studies as applicable to the Accused Shoulder Device and/or the Accused Knee Device.

294.    OneDirect, Rehab, and/or other Defendants cite to the ERMI clinical research studies in order to deceive the consuming public into believing that OneDirect and/or Rehab have tested their devices via clinical research studies.

295.    On information and belief, no studies have been published studying the effectiveness of the Accused Shoulder Device.

296.    On information and belief, no studies have been published studying the effectiveness of the Accused Knee Device.

### *Defendants' Wrongful use of ERMI's TREX mark*

297.    ERMI's TREX trademark has been in continuous use in commerce for nearly 25 years.

298.    The word trex is a made-up word, not appearing in a dictionary. The word "T. rex" does appear in Merriam-Webster's Dictionary and means the short form name of the dinosaur tyrannosaurus rex.

299.    The word trex is fanciful in the context of ERMI's services under ERMI's TREX mark.

300.    Defendants' trademark is "T-Rex" as used on numerous goods and services.

301.    TREX and T-REX are identical in sight and sound.

48

302.     ERMI offers educational services, namely, presentations and speeches in the field of orthopedics and physical rehabilitation under ERMI's TREX mark.

303.     Defendants offer orthopedic rehabilitation devices for medical use under the Infringing T-Rex mark as well as rental and leasing services for such devices under the Infringing T-Rex mark.

304.     ERMI's services and Defendants' goods and services are similar.

305.     ERMI's customers for its TREX services are doctors, medical clinics, other healthcare professionals, and end user patients.

306.     Defendants' customers for their T-Rex products and services are doctors, medical clinics, other healthcare professionals, and end user patients.

307.     ERMI's and Defendants' customers are the same.

308.     ERMI advertises its TREX services via the internet, at professional conferences, and at trade shows.

309.     Defendants advertise their TREX products via the internet, at professional conferences, and/or at trade shows.

310.     ERMI and Defendants use similar forms of advertising media.

311.     Eduardo Marti visited TREX Orthopedic Clinic several months before forming his company, T-Rex Rehab, LLC.

312.     Eduardo Marti knew of ERMI's TREX mark or was willfully blind to its existence at the time he adopted the infringing T-Rex mark.

313.     OneDirect's corporate headquarters is located in close proximity to both ERMI's headquarters and TREX Orthopedic clinic.

314.     OneDirect and T-Rex Investment were familiar with ERMI and Dr. Branch's practice at the time it completed its asset purchase of Rehab.

315.     On information and belief, OneDirect and T-Rex Investment knew of ERMI's TREX mark or were willfully blind to its existence at the time they purchased the rights to the infringing T-Rex mark.

### Defendants' Wrongful use of ERMI's ORBIT mark

316.     ERMI's ORBIT mark has been in continuous use in commerce for over 15 years.

317.     The word orbit is defined in Merriam-Webster's dictionary as 1) the bony socket of the eye; 2) a circular path; and 3) as a range or sphere of activity or influence.

318.     The word orbit is arbitrary in the context of ERMI's services offered under ERMI's ORBIT mark.

319.     Defendants' trademark is "ORBIT" and it is used on goods and services.

320.     ORBIT and ORBIT are identical in sight and sound.

321.     ERMI offers retail and online retail store services featuring surgical supplies under ERMI's ORBIT mark.

322.     Defendants offer orthopedic rehabilitation devices for medical use under the Infringing Orbit mark as well as rental and leasing services for such devices under the Infringing Orbit mark.

323.     ERMI's services and Defendants' goods and services are similar.

324.     ERMI's customers for its ORBIT services are doctors, medical clinics, other healthcare professionals, and end user patients.

325.     Defendants' customers for their ORBIT products and services are doctors, medical clinics, other healthcare professionals, and end user patients.

326.    ERMI's and Defendants' customers are the same.

327.    ERMI advertises its ORBIT services via the internet, at professional conferences, and at trade shows.

328.    Defendants advertise their ORBIT products via the internet, at professional conferences, and/or at trade shows.

329.    ERMI and Defendants' use similar forms of advertising media.

330.    OneDirect's corporate headquarters is located in close proximity to both ERMI's headquarters and TREX Orthopedic clinic.

331.    OneDirect and T-Rex Investment were familiar with ERMI and Dr. Branch's practice at the time it completed its asset purchase of Rehab.

332.    On information and belief, OneDirect and T-Rex Investment knew of ERMI's ORBIT mark or were willfully blind to its existence at the time they began using the infringing Orbit mark in commerce.

### *Kinnick's Distribution of the Accused Devices*

333.    On information and belief, Kinnick is a distributor of Rehab and OneDirect's products including the Accused Shoulder Device and the Accused Knee Device.

334.    On information and belief, Kinnick sells, offers for sale, leases, and/or offers for lease Rehab's and OneDirect's products, including the Accused Shoulder Device and the Accused Knee Device.

335.    Kinnick operates the website https://www.kinnickmedical.com.

336.    On information and belief, Kinnick has demonstrated the Accused Shoulder Device to customers and potential customers.

337.     On information and belief, Kinnick has distributed the Accused Shoulder Device to customers.

338.     On information and belief, Kinnick is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

339.     On information and belief, Kinnick has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

340.     On information and belief, Kinnick is familiar with the ERMI Shoulder Flexionater® device and has knowledge of and/or is willfully blind to the claims of the '289 Patent.

341.     On information and belief, Kinnick is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

342.     On information and belief, Kinnick has used and continues to use the infringing T-Rex mark and/or the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices such as in advertising, and in promotion of the Accused Devices and other devices.

### *Detroit Medical's Distribution of the Accused Device*

343.     On information and belief, Detroit Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

344.     On information and belief, Detroit Medical sells, offers for sale, leases, and/or offers for lease Rehab's and OneDirect's products, including the Accused Shoulder Device, in Michigan.

345.     Mr. Jones is associated with Detroit Medical as a principal and a regional salesperson in Michigan.

346.     On information and belief, Detroit Medical and Mr. Jones have demonstrated the Accused Shoulder Device to customers and potential customers.

347.     On information and belief, Detroit Medical and Mr. Jones have distributed the Accused Shoulder Device to customers.

348.     On information and belief, Detroit Medical and Mr. Jones are aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

349.     On information and belief, Detroit Medical and Mr. Jones have visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

350.     On information and belief, Detroit Medical and Mr. Jones are familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

351.     On information and belief, Detroit Medical and Mr. Jones are familiar with ERMI's ORBIT mark and ERMI's TREX mark.

352.     On information and belief, Detroit Medical and Mr. Jones have used and continue to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

## *Northstate's Distribution of the Accused Device*

353.    On information and belief, Northstate is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

354.    On information and belief, Northstate sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in North Carolina.

355.    Ms. Coppedge is associated with Northstate as an owner and a salesperson in North Carolina.

356.    On information and belief, Northstate and Ms. Coppedge have demonstrated the Accused Shoulder Device to customers and potential customers.

357.    On information and belief, Northstate and Ms. Coppedge have distributed the Accused Device to customers.

358.    On information and belief, Northstate and Ms. Coppedge are aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

359.    On information and belief, Northstate and Ms. Coppedge have visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

360.    On information and belief, Northstate and Ms. Coppedge are familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

361.    On information and belief, Northstate and Ms. Coppedge are familiar with ERMI's ORBIT mark and ERMI's TREX mark.

362.     On information and belief, Northstate and Ms. Coppedge have used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### Mr. Welch's Distribution of the Accused Devices

363.     On information and belief, Mr. Welch is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

364.     On information and belief, Mr. Welch sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Tennessee.

365.     On information and belief, Mr. Welch has demonstrated the Accused Shoulder Device to customers and potential customers.

366.     On information and belief, Mr. Welch has distributed the Accused Shoulder Device to customers.

367.     On information and belief, Mr. Welch is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

368.     On information and belief, Mr. Welch has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

369.     On information and belief, Mr. Welch is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

370.    On information and belief, Mr. Welch is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

371.    On information and belief, Mr. Welch has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. Long's Distribution of the Accused Devices*

372.    On information and belief, Mr. Long is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

373.    On information and belief, Mr. Long sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Illinois.

374.    On information and belief, Mr. Long has demonstrated the Accused Shoulder Device to customers and potential customers.

375.    On information and belief, Mr. Long has distributed the Accused Shoulder Device to customers.

376.    On information and belief, Mr. Long is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

377.    On information and belief, Mr. Long has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

378.   On information and belief, Mr. Long is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

379.   On information and belief, Mr. Long is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

380.   On information and belief, Mr. Long has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *CMS Medical's Distribution of the Accused Devices*

381.   On information and belief, CMS Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

382.   On information and belief, CMS Medical sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in South Carolina.

383.   On information and belief, CMS Medical has demonstrated the Accused Shoulder Device to customers and potential customers.

384.   On information and belief, CMS Medical have distributed the Accused Shoulder Device to customers.

385.   On information and belief, CMS Medical is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

386.    On information and belief, CMS Medical has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

387.    On information and belief, CMS Medical is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

388.    On information and belief, CMS Medical is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

389.    On information and belief, CMS Medical has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. Hegwood (SC)'s Distribution of the Accused Devices*

390.    On information and belief, Mr. Hegwood (SC) is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

391.    On information and belief, Mr. Hegwood (SC) sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in South Carolina.

392.    On information and belief, Mr. Hegwood (SC) has demonstrated the Accused Shoulder Device to customers and potential customers.

393.    On information and belief, Mr. Hegwood (SC) has distributed the Accused Shoulder Device to customers.

394.    On information and belief, Mr. Hegwood (SC) is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and

Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

395.    On information and belief, Mr. Hegwood (SC) has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

396.    On information and belief, Mr. Hegwood (SC) is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

397.    On information and belief, Mr. Hegwood (SC) is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

398.    On information and belief, Mr. Hegwood (SC) has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. Trumble's Distribution of the Accused Devices*

399.    On information and belief, Mr. Trumble is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

400.    On information and belief, Mr. Trumble sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia.

401.    On information and belief, Mr. Trumble has demonstrated the Accused Shoulder Device to customers and potential customers.

402.    On information and belief, Mr. Trumble has distributed the Accused Shoulder Device to customers.

403. On information and belief, Mr. Trumble is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

404. On information and belief, Mr. Trumble has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

405. On information and belief, Mr. Trumble is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

406. On information and belief, Mr. Trumble is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

407. On information and belief, Mr. Trumble has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. Bone's Distribution of the Accused Devices*

408. On information and belief, Mr. Bone is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

409. On information and belief, Mr. Bone sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia.

410. On information and belief, Mr. Bone has demonstrated the Accused Shoulder Device to customers and potential customers.

411.    On information and belief, Mr. Bone has distributed the Accused Shoulder Device to customers.

412.    On information and belief, Mr. Bone is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

413.    On information and belief, Mr. Bone has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

414.    On information and belief, Mr. Bone is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

415.    On information and belief, Mr. Bone is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

416.    On information and belief, Mr. Bone has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Absolute's Distribution of the Accused Devices*

417.    On information and belief, Absolute is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

418.    On information and belief, Absolute sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Mississippi.

419.    On information and belief, Absolute has demonstrated the Accused Shoulder Device to customers and potential customers.

420.    On information and belief, Absolute has distributed the Accused Shoulder Device to customers.

421.    On information and belief, Absolute is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

422.    On information and belief, Absolute has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

423.    On information and belief, Absolute is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

424.    On information and belief, Absolute is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

425.    On information and belief, Absolute has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. West's Distribution of the Accused Devices*

426.    On information and belief, Mr. West is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

427.    On information and belief, Mr. West sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia.

428.    On information and belief, Mr. West has demonstrated the Accused Shoulder Device to customers and potential customers.

429.    On information and belief, Mr. West has distributed the Accused Shoulder Device to customers.

430.    On information and belief, Mr. West is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

431.    On information and belief, Mr. West has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

432.    On information and belief, Mr. West is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

433.    On information and belief, Mr. West is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

434.    On information and belief, Mr. West has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. Hegwood (AL)'s Distribution of the Accused Devices*

435.    On information and belief, Mr. Hegwood (AL) is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

436.    On information and belief, Mr. Hegwood (AL) sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Alabama.

437.    On information and belief, Mr. Hegwood (AL) has demonstrated the Accused Shoulder Device to customers and potential customers.

438.    On information and belief, Mr. Hegwood (AL) has distributed the Accused Shoulder Device to customers.

439.    On information and belief, Mr. Hegwood (AL) is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

440.    On information and belief, Mr. Hegwood (AL) has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

441.    On information and belief, Mr. Hegwood (AL) is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

442.    On information and belief, Mr. Hegwood (AL) is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

443.    On information and belief, Mr. Hegwood (AL) has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder

Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *KPM2's Distribution of the Accused Devices*

444.    On information and belief, KPM2 is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

445.    On information and belief, KPM2 sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia.

446.    On information and belief, KPM2 has demonstrated the Accused Shoulder Device to customers and potential customers.

447.    On information and belief, KPM2 has distributed the Accused Shoulder Device to customers.

448.    On information and belief, KPM2 is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

449.    On information and belief, KPM2 has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

450.    On information and belief, KPM2 is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

451.    On information and belief, KPM2 is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

452.    On information and belief, KPM2 has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the

Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

*Mr. Levitt's Distribution of the Accused Devices*

453.    On information and belief, Mr. Levitt is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

454.    On information and belief, Mr. Levitt sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in North Carolina.

455.    On information and belief, Mr. Levitt has demonstrated the Accused Shoulder Device to customers and potential customers.

456.    On information and belief, Mr. Levitt has distributed the Accused Shoulder Device to customers.

457.    On information and belief, Mr. Levitt is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

458.    On information and belief, Mr. Levitt has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

459.    On information and belief, Mr. Levitt is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

460.    On information and belief, Mr. Levitt is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

461.    On information and belief, Mr. Levitt has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Medfocus's Distribution of the Accused Devices*

462.    On information and belief, Medfocus is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

463.    On information and belief, Medfocus sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Illinois.

464.    On information and belief, Medfocus has demonstrated the Accused Shoulder Device to customers and potential customers.

465.    On information and belief, Medfocus has distributed the Accused Shoulder Device to customers.

466.    On information and belief, Medfocus is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

467.    On information and belief, Medfocus has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

468.    On information and belief, Medfocus is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

469.    On information and belief, Medfocus is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

470.    On information and belief, Medfocus has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Premier Orthopedic's Distribution of the Accused Devices*

471.    On information and belief, Premier Orthopedic is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

472.    On information and belief, Premier Orthopedic sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in New York.

473.    On information and belief, Premier Orthopedic has demonstrated the Accused Shoulder Device to customers and potential customers.

474.    On information and belief, Premier Orthopedic has distributed the Accused Shoulder Device to customers.

475.    On information and belief, Premier Orthopedic is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

476.    On information and belief, Premier Orthopedic has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

477.    On information and belief, Premier Orthopedic is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

478.    On information and belief, Premier Orthopedic is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

479.    On information and belief, Premier Orthopedic has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### Tyson & Carter's Distribution of the Accused Devices

480.    On information and belief, Tyson & Carter is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

481.    On information and belief, Tyson & Carter sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia.

482.    On information and belief, Tyson & Carter has demonstrated the Accused Shoulder Device to customers and potential customers.

483.    On information and belief, Tyson & Carter has distributed the Accused Shoulder Device to customers.

484.    On information and belief, Tyson & Carter is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

485.   On information and belief, Tyson & Carter has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

486.   On information and belief, Tyson & Carter is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

487.   On information and belief, Tyson & Carter is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

488.   On information and belief, Tyson & Carter has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Cade's Distribution of the Accused Devices*

489.   On information and belief, Cade is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

490.   On information and belief, Cade sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in California.

491.   On information and belief, Cade has demonstrated the Accused Shoulder Device to customers and potential customers.

492.   On information and belief, Cade has distributed the Accused Shoulder Device to customers.

493.     On information and belief, Cade is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

494.     On information and belief, Cade has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

495.     On information and belief, Cade is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

496.     On information and belief, Cade is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

497.     On information and belief, Cade has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Great American's Distribution of the Accused Devices*

498.     On information and belief, Great American is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

499.     On information and belief, Great American sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in New York.

500.     On information and belief, Great American has demonstrated the Accused Shoulder Device to customers and potential customers.

501.     On information and belief, Great American has distributed the Accused Shoulder Device to customers.

502.    On information and belief, Great American is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

503.    On information and belief, Great American has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

504.    On information and belief, Great American is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

505.    On information and belief, Great American is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

506.    On information and belief, Great American has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *SE Medical's Distribution of the Accused Devices*

507.    On information and belief, SE Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

508.    On information and belief, SE Medical sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia and Alabama.

509.    On information and belief, SE Medical has demonstrated the Accused Shoulder Device to customers and potential customers.

510.    On information and belief, SE Medical has distributed the Accused Shoulder Device to customers.

511.    On information and belief, SE Medical is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

512.    On information and belief, SE Medical has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

513.    On information and belief, SE Medical is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

514.    On information and belief, SE Medical is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

515.    On information and belief, SE Medical has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### Soma Medical's Distribution of the Accused Devices

516.    On information and belief, Soma Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

517.    On information and belief, Soma Medical sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in South Carolina.

518.    On information and belief, Soma Medical has demonstrated the Accused Shoulder Device to customers and potential customers.

519.    On information and belief, Soma Medical has distributed the Accused Shoulder Device to customers.

520.    On information and belief, Soma Medical is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

521.    On information and belief, Soma Medical has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

522.    On information and belief, Soma Medical is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

523.    On information and belief, Soma Medical is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

524.    On information and belief, Soma Medical has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### SOS Medical's Distribution of the Accused Devices

525.    On information and belief, SOS Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

526.    On information and belief, SOS Medical sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in California.

527.    On information and belief, SOS Medical has demonstrated the Accused Shoulder Device to customers and potential customers.

528.    On information and belief, SOS Medical has distributed the Accused Shoulder Device to customers.

529.    On information and belief, SOS Medical is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

530.    On information and belief, SOS Medical has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

531.    On information and belief, SOS Medical is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

532.    On information and belief, SOS Medical is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

533.    On information and belief, SOS Medical has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Mr. Duty's Distribution of the Accused Devices*

534.     On information and belief, Mr. Duty is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

535.     On information and belief, Mr. Duty sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Michigan.

536.     On information and belief, Mr. Duty has demonstrated the Accused Shoulder Device to customers and potential customers.

537.     On information and belief, Mr. Duty has distributed the Accused Shoulder Device to customers.

538.     On information and belief, Mr. Duty is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

539.     On information and belief, Mr. Duty has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

540.     On information and belief, Mr. Duty is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

541.     On information and belief, Mr. Duty is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

542.     On information and belief, Mr. Duty has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the

Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *Orthopedics Intl.'s Distribution of the Accused Devices*

543.    On information and belief, Orthopedics Intl. is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

544.    On information and belief, Orthopedics Intl. sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Georgia.

545.    On information and belief, Orthopedics Intl. has demonstrated the Accused Shoulder Device to customers and potential customers.

546.    On information and belief, Orthopedics Intl. has distributed the Accused Shoulder Device to customers.

547.    On information and belief, Orthopedics Intl. is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

548.    On information and belief, Orthopedics Intl. has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

549.    On information and belief, Orthopedics Intl. is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

550.    On information and belief, Orthopedics Intl. is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

551.    On information and belief, Orthopedics Intl. has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### Decker Medical's Distribution of the Accused Devices

552.    On information and belief, Decker Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

553.    On information and belief, Decker Medical sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Missouri.

554.    On information and belief, Decker Medical has demonstrated the Accused Shoulder Device to customers and potential customers.

555.    On information and belief, Decker Medical has distributed the Accused Shoulder Device to customers.

556.    On information and belief, Decker Medical is aware of Rehab's brochure, **Exhibit 26,** or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

557.    On information and belief, Decker Medical has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

558.    On information and belief, Decker Medical is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

559.    On information and belief, Decker Medical is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

560.    On information and belief, Decker Medical has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *PointClear's Distribution of the Accused Devices*

561.    On information and belief, PointClear is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

562.    On information and belief, PointClear sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Mississippi.

563.    On information and belief, PointClear has demonstrated the Accused Shoulder Device to customers and potential customers.

564.    On information and belief, PointClear has distributed the Accused Shoulder Device to customers.

565.    On information and belief, PointClear is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

566.    On information and belief, PointClear has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

567.    On information and belief, PointClear is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

568.    On information and belief, PointClear is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

569.    On information and belief, PointClear has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### IASO's Distribution of the Accused Devices

570.    On information and belief, IASO is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

571.    On information and belief, IASO sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in Arizona.

572.    On information and belief, IASO has demonstrated the Accused Shoulder Device to customers and potential customers.

573.    On information and belief, IASO has distributed the Accused Shoulder Device to customers.

574.    On information and belief, IASO is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

575.    On information and belief, IASO has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

576.   On information and belief, IASO is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

577.   On information and belief, IASO is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

578.   On information and belief, IASO has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

### *SGR Medical's Distribution of the Accused Devices*

579.   On information and belief, SGR Medical is a distributor of Rehab and OneDirect products including the Accused Shoulder Device.

580.   On information and belief, SGR Medical sells, offers for sale, leases, and/or offers for lease Rehab's products, including the Accused Shoulder Device, in California.

581.   On information and belief, SGR Medical has demonstrated the Accused Shoulder Device to customers and potential customers.

582.   On information and belief, SGR Medical has distributed the Accused Shoulder Device to customers.

583.   On information and belief, SGR Medical is aware of Rehab's brochure, **Exhibit 26**, or others like it, which, in addition to showing the Accused Shoulder Device and Accused Knee Device, also shows a photograph of the ERMI Shoulder Flexionater® device, **Exhibit 19**.

584. On information and belief, SGR Medical has visited facilities, such as medical facilities, trade shows, or conferences, where the ERMI Shoulder Flexionater® device is used or displayed.

585. On information and belief, SGR Medical is familiar with the ERMI Shoulder Flexionater® device and have knowledge of and/or are willfully blind to the claims of the '289 Patent.

586. On information and belief, SGR Medical is familiar with ERMI's ORBIT mark and ERMI's TREX mark.

587. On information and belief, SGR Medical has used and continues to use the infringing T-Rex mark and the infringing Orbit mark in commerce on the Accused Shoulder Device, the Accused Knee Device, and other devices, in advertising, and in promotion of the Accused Devices and other devices.

## COUNT I – WILLFUL DIRECT PATENT INFRINGEMENT

### *35 U.S.C. § 271(a)*

### *All Defendants, except Ms. Coppedge, Mr. Jones, Mr. Greene*

588. ERMI hereby incorporates paragraphs 1 - 587 above as if fully set forth herein.

589. *All* Defendants, except Ms. Coppedge, Mr. Jones, and Mr. Greene have directly infringed and continue to directly infringe at least Claims 1, 2, 3, 4, and 22 of the '289 Patent through using, selling, distributing and/or offering to sell and distribute the Accused Shoulder Device as reflected in ERMI's initial claim chart. **Exhibit 33**.

590. On information and belief, Mr. Smith personally performed the steps of method Claim 22 prior to the formation of OneDirect.

591.    The Accused Shoulder Device is an apparatus for manipulating the shoulder joint of an arm of a user and embodies at least Claim 1 of the '289 Patent, and its use by Defendants infringes at least method Claim 22 of the '289 Patent.

592.    Defendants have literally infringed and continue to literally infringe at least one claim of the '289 Patent.

593.    Defendants have infringed and continue to infringe at least one claim of the '289 Patent pursuant to the Doctrine of Equivalents.

594.    On information and belief, Defendants use and have used the Accused Shoulder Device at various trade shows, in demonstration of the device, and/or in testing.

595.    Defendants had knowledge of the '289 Patent at least as early as Mr. Marti's visit to ERMI in December 2013.

596.    Defendants had knowledge of the '289 Patent at least as early as August 27, 2015, the date Mr. Marti filed an Information Disclosure Statement with the United States Patent Office listing the getmotion.com website during prosecution of the patent applications Mr. Marti assigned to Rehab.

597.    On information and belief, Distributor Defendants comprise the sales force for OneDirect.  OneDirect makes few—if any—direct sales.  Thus, Distributor Defendants are the "acting arm" of OneDirect and, together, comprise a single enterprise, such that OneDirect's knowledge of the '289 Patent may be imputed to Distributor Defendants, especially given OneDirect's involvement in distribution.  In fact, on its website, OneDirect seeks additional distributors to join "the T-Rex family."  *See* https://trexrehab.com/distributors/.  Further, on information and belief, OneDirect personnel play a significant role in distribution, including *inter alia*, proscribing OneDirect's various territories for distribution.  For example, OneDirect

describes its distribution model as "territory / city dependent" and offers "different tiers of distributor." *See* https://trexrehab.com/distributors/. Further, on information and belief, as the sales force for and agents of OneDirect, Distributor Defendants receive trainings related to competing products, including those sold by ERMI. Further, on information and belief, Distributor Defendants had access to the April 2016 OneDirect memorandum described *supra*. Accordingly, Distributor Defendants had knowledge of and/or were willfully blind with respect to the claims of the '289 Patent.

598.     Defendants have willfully infringed and continue to willfully infringe the '289 Patent. Despite their knowledge of the '289 Patent, Defendants have sold and continue to sell the Accused Shoulder Device in complete and reckless disregard of ERMI's patent rights.

599.     As a result of Defendants' unlawful activities, ERMI has suffered and will continue to suffer irreparable harm.

600.     Defendants' infringement of the '289 Patent has injured and continues to injure ERMI in an amount to be proven at trial, but not less than a reasonable royalty.

## COUNT II – INDIRECT PATENT INFRINGEMENT

### *35 U.S.C. § 271(b); 35 U.S.C. § 271(c)*

### *All Defendants*

601.     ERMI hereby incorporates paragraphs 1 - 599 above as if fully set forth herein.

602.     *All* Defendants market, advertise, demonstrate, sell, distribute and offer to sell and distribute the Accused Shoulder Device to third parties including doctors, medical practices, care facilities, and directly to end user patients.

603.     *All* Defendants have induced and continue to induce infringement of at least Claim 22 of the '289 Patent under 35 U.S.C. § 271(b).

604. In addition to directly infringing the '289 Patent, Defendants indirectly infringe by instructing, directing and/or requiring others, including the corporate entities they control, doctors, medical practices, care facilities, and/or end user patients, to perform the steps of method Claim 22, either literally or under the Doctrine of Equivalents, of the '289 Patent, where all of the steps of the method claim are performed by either Defendants or its customers, doctors, medical practices, care facilities, end user patients, or some combination thereof.

605. The patients directly infringe the '289 Patent by using the Accused Shoulder Device to treat their shoulders.

606. The doctors, care providers, and medical practices also directly infringe the '289 Patent by prescribing the Accused Shoulder Device to patients, by providing instructions on use to patients, and by controlling and directing patients' use of the Accused Shoulder Device. Defendants have direct knowledge and/or are willfully blind to the fact that they are inducing others, including doctors, medical practices, care facilities, and end user patients, to infringe by practicing, either themselves or in conjunction with Defendants, method Claim 22 of the '289 Patent.

607. By advertising, distributing, leasing and/or selling the Accused Shoulder Device to others, Defendants have knowingly and intentionally aided, abetted, and induced others to directly infringe at least one claim of the '289 Patent.

608. The Accused Shoulder Device has no substantial non-infringing use.

609. By providing the accused products to others, *all* Defendants have contributed and are contributing to the infringement by others of at least Claims 1, 2, 3, 4, and 22 of the '289 Patent.

## COUNT III – LANHAM ACT FALSE ADVERTISING

### *15 U.S.C. § 1125(a)*

### *Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect*

610.     ERMI hereby incorporates paragraphs 1 - 608 above as if fully set forth herein.

611.     Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's false statements about ERMI's devices constitute false or misleading representations of fact.

612.     Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's use of false or misleading representations of fact in commercial advertising or promotion misrepresents the nature, characteristics, or qualities of ERMI's goods. Defendants Rehab, T-Rex Investment, and OneDirect's use of false or misleading representations of fact has the tendency to deceive a substantial portion of the target consumer audience, or actually deceives the target consumers and users.

613.     Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's use of false or misleading representations of fact are material because they are likely to influence the purchasing and use decisions of the target consumers and users.

614.     Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's use of false or misleading representations of fact is in connection with the sale of products that are advertised, promoted, sold and distributed in interstate commerce.

615.     ERMI has been and continues to be injured by Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's false or misleading representations of fact through the diversion of sales or loss of goodwill.

616.     Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect know that their representations of fact are false or misleading.

617.    Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's false or misleading representations of fact were done with bad faith and malice or reckless indifference to ERMI's and consumers' interests.

618.    Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's bad faith false or misleading representations of fact regarding ERMI's devices makes this an exceptional case within the meaning of 15 U.S.C. § 1117.

619.    Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect continue to make false or misleading representations of fact regarding ERMI's devices and will continue to do so unless enjoined by this Court as provided by 15 U.S.C. § 1116.

620.    ERMI is entitled to an award of Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's profits due to sales of the falsely or misleadingly represented products, any damages sustained by ERMI, and the costs of the action pursuant to 15 U.S.C. § 1117.

## COUNT IV – FEDERAL COPYRIGHT INFRINGEMENT

### *17 U.S.C. § 501*

### *Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect*

621.    Paragraphs 1 - 620 are incorporated herein by reference as though set forth in their entirety.

622.    ERMI is the owner of all right, title, and interest in and to the copyrights associated with the Copyrighted Works.

623.    Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect had access to the Copyrighted Works because the Copyrighted Works were displayed on ERMI's website and ERMI's website was referenced in Defendants' patent application.

624.    The Infringing Photographs are copies of the Copyrighted Works.

625.     The Infringing Photographs are substantially similar to the Copyrighted Works.

626.     The Infringing Photographs are strikingly similar to the Copyrighted Works.

627.     Upon information and belief, Defendants Rehab, T-Rex Investment, and OneDirect did willfully and unlawfully copy or cause to be copied the Copyrighted Works and did willfully and unlawfully create or cause to be created derivative works therefrom.

628.     Such conduct violates the exclusive rights of the copyright owner as set forth in 17 U.S.C. § 106 and creates in ERMI as the copyright owner, a cause of action for copyright infringement under 17 U.S.C. § 501.

629.     ERMI has been damaged by Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's conduct and will continue to be so damaged in the absence of relief granted by this Court.

## COUNT V – LANHAM ACT REVERSE PASSING-OFF

### *15 U.S.C. § 1125(a)*

### *Defendants Mr. Marti, Rehab, T-Rex Investment, OneDirect, Mr. Greene, and Mr. Smith*

630.     Paragraphs 1 - 629 are incorporated herein by reference as though set forth in their entirety.

631.     All of the ERMI Clinical Research Studies utilized the ERMI Shoulder Flexionater® Device and/or the ERMI Knee Flexionater® Device. These ERMI Clinical Research Studies included at least the following: The Papotto and Mills Study; The Stephenson, Quimbo, and GU Study; The Uhl and Jacobs Study; The Dempsey, Branch, Mills, and Karsch Study; and The Palmer, Branch, Mills, and Karsch Study.

632.     None of the ERMI Clinical Research Studies utilized the Accused Shoulder Device or the Accused Knee Device.

633.    Each of the ERMI Clinical Research Studies, as used by Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment, are branded by Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment on their respective websites and/or in advertising brochures with the Infringing T-REX mark and/or the Infringing Orbit mark.

634.    Each of the ERMI Clinical Research Studies, as used by Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment, are represented by Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment as originating by and/or as studying the Accused Shoulder Device and/or the Accused Knee Device.

635.    Through the actions complained of herein, Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment have willfully made and are making false, deceptive, and misleading representations and descriptions constituting false designation of origin made in and in connection with interstate commerce, including, without limitation, false designations of origin of the ERMI Clinical Research Studies.

636.    Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment's false designations of origin are likely to cause consumer confusion as to the origin of the ERMI Clinical Research Studies, including without limitation, by causing consumers to believe falsely that Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment originated the ERMI Clinical Research Studies and that the ERMI Clinical Research Studies actually studied the Accused Shoulder Device and the Accused Knee Device.

637.    Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment's false designations of origin constitute reverse passing-off and unfair competition and violate ERMI's rights under at least 15 U.S.C. § 1125(a).

638.     Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment's false designations of origin in reverse passing-off have reasonably and foreseeably damaged and will continue to damage ERMI in an amount to be determined at trial.

639.     Mr. Marti, Mr. Greene, Mr. Smith, Rehab, OneDirect, and/or T-Rex Investment's willful actions make this case an exceptional case within the meaning of 15 U.S.C. § 1117.

## COUNT VI – LANHAM ACT FALSE DESIGNATION OF ORIGIN

### *15 U.S.C. § 1125(a)*

### *All Defendants*

640.     Paragraphs 1 - 639 are incorporated herein by reference as though set forth in their entirety.

641.     ERMI is the owner of all common law rights in the word mark TREX for use in association with educational services, namely, presentations and speeches in the field of orthopedics and physical rehabilitation.

642.     ERMI and its predecessors in interest have used ERMI's TREX mark in commerce since at least 1996.

643.     ERMI is the owner of all common law rights in the word mark ORBIT for retail and online retail store services featuring surgical supplies.

644.     ERMI and its predecessors in interest have used ERMI's ORBIT mark in commerce since at least 2004.

645.     At least as of 2014, one or more of the Defendants, without consent from ERMI, adopted, used, and continue to use in commerce the infringing T-REX mark in association with medical devices and services including the Accused Shoulder Device and/or the Accused Knee Device. *All* Defendants have used and/or continue to use the infringing T-REX mark in

commerce in association with medical devices and services including the Accused Shoulder Device and/or the Accused Knee Device.

646.   At least as of 2016, one or more of the Defendants, without consent from ERMI, adopted, used, and continue to use in commerce the infringing ORBIT mark in association with medical devices and services including the Accused Shoulder Device and/or the Accused Knee Device. *All* Defendants have used and/or continue to use the infringing ORBIT mark in commerce in association with medical devices and services including the Accused Shoulder Device and/or the Accused Knee Device.

647.   On information and belief, all Defendants had prior knowledge of ERMI's trademark rights in ERMI's TREX mark and in ERMI's ORBIT mark prior to Defendants' adoption and use of the infringing T-REX mark and the infringing ORBIT mark.

648.   Use of the infringing T-REX mark in connection with the sale, offering for sale, distribution, and advertising of *all* Defendants' goods and services is likely to cause confusion, mistake, or deception with respect to the source of the goods.

649.   Use of the infringing ORBIT mark in connection with the sale, offering for sale, distribution, and advertising of all Defendants' goods and services is likely to cause confusion, mistake, or deception with respect to the source of the goods.

650.   ERMI has been damaged and, in absence of relief from this Court, will continue to be damaged by the use of Defendants' infringing T-REX mark in connection with Defendants' goods and services.

651.   ERMI has been damaged and, in absence of relief from this Court, will continue to be damaged by the use of Defendants' infringing ORBIT mark in connection with Defendants' goods and services.

652.     *All* Defendants have used and are using, in commerce, in connection with the sale, offer for sale, distribution, and advertising of goods and services, the infringing T-REX mark in such a manner as is likely to cause confusion, or to cause mistake, deceive as to the affiliation, connection or association as to the origin, or falsely designate the origin, sponsorship, or approval of the goods and services to consumers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

653.     *All* Defendants have used and are using, in commerce, in connection with the sale, offer for sale, distribution, and advertising of goods and services, the infringing ORBIT mark in such a manner as is likely to cause confusion, or to cause mistake, deceive as to the affiliation, connection or association as to the origin, or falsely designate the origin, sponsorship, or approval of the goods and services to consumers in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

## <u>COUNT VII – GEORGIA TRADEMARK INFRINGEMENT</u>

### *Ga. Code § 10-1-451(a), (b)*

### *All Defendants*

654.     Paragraphs 1 - 653 are incorporated herein by reference as though set forth in their entirety.

655.     ERMI is the owner of ERMI's TREX mark which is the subject of Georgia Trademark Registration Number S-29940. **Exhibit 5**.

656.     On information and belief, all Defendants have used and/or continue to use in commerce the infringing T-REX mark in connection with Defendants' products and services which include but are not necessarily limited to the Accused Shoulder Device and the Accused Knee Device.  For example, Defendants Jon Trumble, Tab Bone, Brett West, KPM2, LLC,

Tyson & Carter, Inc., SE Medical, LLC, and Orthopedics International have used and/or continue to use the infringing T-REX mark in commerce in connection with Defendants' products and services, including but not limited to offering the products for sale in Georgia and shipping the products to and within Georgia.

657.    On information and belief, when one of the Distributor Defendants sells and/or leases one of the Accused Devices to a third party medical provider or patient, the particular Accused Device which has been leased is shipped from the state of Georgia, FOB Georgia, to the location of the Distributor and/or the third party medical provider or patient. On information and belief, the Accused Devices are shipped in vehicles which display to the public the infringing T-REX mark.

658.    As can be seen in the below picture, a vehicle displaying the infringing T-REX mark and with Georgia plates was traveling in the state of North Carolina in 2019.    On information and belief, the photographed vehicle was transporting one or more of the Accused Devices bearing the infringing T-REX mark.



659.    All Defendants have manufactured, used, displayed, or sold products and/or services which use the infringing T-REX mark.

660.    Use of the infringing T-REX mark in connection with the sale, offering for sale, distribution, and advertising of all Defendants' goods and services is likely to cause confusion, mistake, or deception with respect to the source of the goods.

661.    All Defendants' use has caused a likelihood of injury to ERMI's business reputation and dilution of the distinctive quality of ERMI's TREX mark in violation of Ga. Code § 10-1-451(b).  This injury has been felt by ERMI in the state of Georgia and elsewhere.

662.    ERMI has been damaged in the state Georgia and, in absence of relief from this Court, will continue to be damaged by the use of Defendants' infringing T-REX mark in connection with Defendants' goods and services.

663.    All Defendants' conduct has been in willful violation of Ga. Code § 10-1-451 entitling ERMI to recover from all Defendants all profits Defendants derived from such wrongful manufacture, use, display, and/or sale, and all damages suffered by ERMI as a result of such wrongful manufacture, use, display, or sale.

664.    ERMI will continue to suffer irreparable harm and damage unless Defendants' wrongful manufacture, use, display, and/or sale of goods and services in association with the infringing T-REX mark is enjoined by this Court.

## COUNT VIII – LANHAM ACT UNFAIR COMPETITION

### *15 U.S.C. §1125(a)*

### *All Defendants*

665.    Paragraphs 1 - 664 are incorporated herein by reference as though set forth in their entirety.

666.     All Defendants' activities described in this First Amended Omnibus Complaint constitute violations of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a) in that Defendants' conduct is likely to cause confusion or mistake among the purchasing public and also misrepresents the nature and quality of ERMI's goods and services.

667.     Defendants' activities have occurred in interstate commerce and have damaged ERMI.

## COUNT IX GEORGIA UNFAIR AND DECEPTIVE TRADE PRACTICES

### *Ga. Code § 10-1-373*

### *All Defendants*

668.     Paragraphs 1 - 667 are incorporated herein by reference as though set forth in their entirety.

669.     *All* Defendants' activities described in this First Amended Omnibus Complaint constitute willful deceptive trade practices, as defined in Section 10-1-373 of the Georgia Code as ERMI has been irreparably harmed and damaged, and is likely to continue to be irreparably harmed and damaged, absent an injunction by this Court, by the deceptive trade practices of *all* Defendants.

670.     Because Defendants' activities have been willful as alleged in this First Amended Omnibus Complaint, ERMI is entitled to its attorneys' fees.

## COUNT X GEORGIA COMMON LAW UNFAIR COMPETITION

### *All Defendants*

671.     Paragraphs 1 - 670 are incorporated herein by reference as though set forth in their entirety.

672.   *All* Defendants' activities described in this First Amended Omnibus Complaint constitute unfair acts that have damaged the legitimate business activities related to ERMI's manufacture, sale, offering for sale, advertising, using, and distributing to the public medical equipment and supplies including ERMI's Shoulder Flexionater® Device and ERMI's Knee Flexionater® Device, among other products. Defendants' illegal activities have been in and affected commerce including among the purchasing public. Therefore, those activities by Defendants constitute unfair and deceptive acts and practices in the State of Georgia pursuant to the common law of Georgia.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ERMI LLC, by and through the undersigned, hereby respectfully asks this Court and/or the Courts in the Transferor Districts, should any of these actions be remanded, to enter judgment against Defendants Mr. Marti, Rehab, Team Post Op, T-Rex Investment, OneDirect, Mr. Greene, Mr. Smith, Northstate, Ms. Coppedge, Detroit Medical, Mr. Jones, Kinnick, Kaiser Medical, Mr. Kaiser, Mr. Welch, Mr. Long, CMS Medical, Mr. Hegwood (SC), Mr. Trumble, Mr. Bone, Absolute, Mr. West, Mr. Hegwood (AL), KPM2, Mr. Levitt, Medfocus, Premier Orthopedic, Tyson & Carter, Cade, Great American, SE Medical, Soma Medical, SOS Medical, Mr. Duty, Orthopedics Intl., Decker Medical, PointClear, IASO, and SGR Medical and their respective subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with them, granting the following relief:

A.     An entry of judgment holding that all Defendants: have infringed and are infringing the '289 Patent in violation of 35 U.S.C. § 271 (a); have induced infringement and are inducing infringement of the '289 Patent in violation of 35 U.S.C. § 271 (b); and have

contributed to and are contributing to the infringement of the '289 Patent in violation of 35 U.S.C. § 271 (c);

B.      An entry of judgment holding that all Defendants have willfully infringed the '289 Patent, either directly or indirectly;

C.      An entry of judgment holding that Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect have made false and misleading statements in advertisements in violation of 15 U.S.C. § 1125(a);

D.      An entry of judgment holding that Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect have infringed United States Copyright Registration No. VA 2-146-537, United States Copyright Registration No. VA 2-146-536, and United States Copyright Registration No. VA 2-146-538 in violation of 17 U.S.C. § 501;

E.      An entry of judgment holding that Defendants Mr. Marti, Rehab, T-Rex Investment, OneDirect, Mr. Greene, and Mr. Smith have engaged in willful reverse passing-off by passing-off clinical research relating to ERMI's Shoulder Flexionater® Device and/or ERMI's Knee Flexionater® Device as their own in violation of 15 U.S.C. § 1125(a);

F.      An entry of judgment holding that all Defendants have made willful false designations of origin in violation of 15 U.S.C. § 1125(a);

G.      An entry of judgment holding that all Defendants have committed willful trademark infringement in violation of Ga. Code § 10-1-451;

H.      An entry of judgment holding that all Defendants have committed willful deceptive trade practices in violation of Ga. Code § 10-1-373;

I.      An entry of judgment holding that all Defendants have committed Georgia Common Law Unfair Competition;

J.     A permanent injunction enjoining *all* Defendants, their agents, servants, employees, and attorneys and all those in active concert or participation with any of the Defendants from:

1)     Using, making, leasing, offering to lease, selling, offering to sell, or importing any device which infringes the '289 Patent for the life of the '289 Patent including, but not limited to, the Accused Shoulder Device and colorable imitations thereof;

2)     Inducing others to use, make, lease, offer to lease, sell, offer to sell, or import any device which infringes the '289 Patent for the life of the '289 Patent including, but not limited to, the Accused Shoulder Device and colorable imitations thereof;

3)     Contributing to or aiding others in using, making, leasing, offering to lease, selling, offering to sell, or importing any device which infringes the '289 Patent for the life of the '289 Patent including, but not limited to, the Accused Shoulder Device and colorable imitations thereof;

4)     Using any trademark, service mark, logo, trade name, domain name or designation confusingly similar to ERMI's TREX mark and/or ERMI's ORBIT mark; and

5)     Unfairly competing with ERMI.

K.     An injunction against Defendants Mr. Marti, Rehab, T-Rex Investment, OneDirect, Mr. Greene, and Mr. Smith and all those acting in concert with them from:

1)     making any further false or misleading statements regarding ERMI devices;

2)    infringing any Copyright owned by ERMI including United States Copyright Registrations No. VA 2-146-537, VA 2-146-536, and VA 2-146-538, but not limited to further creation, use derivative, or distribution of the Infringing Photographs; and

3)    reverse passing-off of the ERMI Clinical Research as their own;

L.    That this Court order the impounding and destruction of any and all Accused Shoulder Devices, as violative of the '289 Patent, in the possession of any defendant;

M.    That this Court order the impounding and destruction of any and all Accused Shoulder Devices, Accused Knee Devices, Accused Ankle Devices, and Accused Hip Devices as violative of the ERMI's rights in ERMI's TREX mark, in the possession of any defendant;

N.    That this Court order the impounding and destruction of any and all Accused Shoulder Devices, Accused Knee Devices, Accused Ankle Devices, and Accused Hip Devices as violative of the ERMI's rights in ERMI's ORBIT mark, in the possession of any defendant;

O.    That this Court order the impounding and destruction of any and all copies of the Infringing Photographs made or used by Defendants, including any and all electronic files or other means by which copies of the same may be reproduced;

P.    An award to ERMI for the full amount of damages sustained, including, but not limited to, any and all damage remedies available pursuant to the patent laws of the United States, 35 U.S.C. §§ 271, *et. seq.*, the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and the Copyright Act, 17 U.S.C. § 101, *et seq.*, Ga. Code. § 10-1-373 and Ga. Code § 10-1-451, which include, but are not limited to, lost profits, a reasonable royalty award, prejudgment interest, post judgment interest, treble damages, and monetary compensation for past and/or future corrective advertising;

Q.     A determination that all Defendants' patent infringement, trademark infringement, and unfair competition has been willful, wanton, and deliberate and that the damages against them be increased up to treble on this basis or for any other basis in accordance with the law;

R.     A determination that Defendants Mr. Marti, Rehab, OneDirect, and T-Rex Investment's copyright infringement, false advertising, and reverse passing-off has been willful, wanton, and deliberate and that the damages against them be increased up to treble on this basis or for any other basis in accordance with the law;

S.     A determination that Defendants Mr. Marti, Rehab, T-Rex Investment, and OneDirect's false misrepresentations of fact were with bad faith and malice or reckless indifference to ERMI's and consumers' interests and that the damages against them be increased up to treble on this basis or for any other basis in accordance with the law;

T.     A finding that this case is exceptional and an award to ERMI of its costs and reasonable attorneys' fees, as provided by 35 U.S.C. § 285 and 15 U.S.C. § 1117;

U.     A finding that ERMI is the prevailing party and an award of costs and attorneys' fees as provided by GA Code § 10-1-373;

V.     An accounting of all profits earned as a result of Defendants Mr. Marti, Rehab, T-Rex Investment, OneDirect, Mr. Greene, and Mr. Smith's Lanham Act violations including false advertising and reverse passing-off together with all pre-judgment and post-judgment interest at the maximum allowable rate from the first date of any Lanham Act violation in accordance with 15 U.S.C. § 1117;

W.     An accounting of all profits earned as a result of each Defendant's Lanham Act violations including false designation of origin and unfair competition together with all pre-

judgment and post-judgment interest at the maximum allowable rate from the first date of any

Lanham Act violation in accordance with 15 U.S.C. § 1117;

X.      An accounting of all profits earned which are attributable to the Defendants Mr.

Marti, Rehab, T-Rex Investment, and OneDirect's copyright infringement in accordance with 17

U.S.C. § 504;

Y.      An award of all profits earned by all Defendants as a result of Defendants'

violations of GA Code § 10-1-373;

Z.      That all triable issues of fact be brought before a jury in this Court and that if any

issues and/or parties are not subject to jury trial in this Court, that those cases be remanded for

trial in the Transferor District following jury trial in this Court; and

AA.     Such further and additional relief this Court deems just and proper under the

circumstances.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff, ERMI LLC hereby demands trial by jury of all issues so triable.


This the 24th day of April, 2020.

Respectfully submitted,

By: /s/ Samuel A. Long, Jr.
Samuel A. Long, Jr. (*Pro Hac Vice*)
along@shumaker.com
Patrick B. Horne (*Pro Hac Vice*)
phorne@shumaker.com
Christina Davidson Trimmer (*Pro Hac Vice*)
ctrimmer@shumaker.com
Tom BenGera (*Pro Hac Vice*)
tbengera@shumaker.com
SHUMAKER, LOOP & KENDRICK, LLP
101 South Tryon Street, Suite 2200
Charlotte, North Carolina 28280-0002
Telephone: (704) 375-0057
Fax: (704) 332-1197

Mindi M. Richter
Florida Bar No. 00044827
mrichter@shumaker.com
SHUMAKER, LOOP & KENDRICK, LLP
101 E. Kennedy Boulevard
Suite 2800
Tampa, Florida 33602
Tel.: (813) 229-7600
Fax: (813) 229-1660

*Counsel for Plaintiff ERMI LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

This the 24th day of April, 2020.

 /s/ Samuel A. Long, Jr.
Samuel A. Long, Jr.

103